IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| **In re:** | * | |
| | * | Case Nos. 24-12500; 24-12504; 24-12506; 24-12508; 24-12511 |
| **WARFIELD HISTORIC PROPERTIES, LLC,** *et al.*, | * | (Chapter 11) |
| | * | Jointly Administered Under Case No. 24-12500-LSS |
| Debtor. | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OBJECTION OF THE TOWN OF SYKESVILLE TO DEBTOR
WARFIELD CENTER, LLC'S MOTION FOR ORDER APPROVING
SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) and (f)**

The Town of Sykesville (the "Town"), by its undersigned counsel, hereby objects to the Motion for an Order Approving Sale of Real Property Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f) (the "Sale Motion"), filed by debtor Warfield Center, LLC ("Warfield Center"), and states:

**Introduction**

1. By the Sale Motion, Warfield Center seeks approval of a Contract of Sale dated April 1, 2024 (the "Contract"), for the private sale of real property and improvements known as Parcel B and consisting of, *inter alia*, approximately 3.42 acres of land situated within the Town (as more fully described in the Sale Motion, the "Property"), supposedly to an arms-length buyer, in a process that appears unlikely to settle within two (2) years, if at all.  Settlement of the sale completely depends on the purchaser's speculative ability to obtain within eighteen (18) months (subject to extension) certain "Development Approvals" necessary to enable the purchaser to develop a senior living center.  Neither Warfield Center, nor the proposed purchaser, are

1

represented by a broker, yet Warfield Center does not propose to subject the Contract to competitive bidding in an auction, as a "stalking horse" bid, which might have yielded a prospective purchaser capable of settling within a reasonable time and without the speculative contingency inherent in the Contract. The Court should deny the Sale Motion because, given the lack of a competitive bidding process and the contingencies and uncertainty surrounding the Contract, Warfield Center has not met its burden for the Court to approve such a sale, particularly at this early stage of the bankruptcy proceedings without any demonstration that the Property has been exposed adequately to the market.

**Background**

2.     On March 26, 2024 (the "Petition Date"), Warfield Center and its affiliated debtors, Warfield Historic Properties, LLC, Warfield Historic Quad, LLC, Warfield Properties, LLC and Warfield Restorations, LLC (collectively with Warfield Center, the "Debtors"), each filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtors' cases are jointly administered under Case No. 24-12500-LSS.

3.     The Debtors are successors-in-interest to The Warfield Collaborative, LLC, a Maryland limited liability company ("TWC"), as purchaser under an Agreement of Purchase and Sale made on or about April 17, 2014 ("the Purchase Agreement"), with the Town as "Seller," for the sale and purchase of certain real property located within the Town. The Purchase Agreement was subsequently amended twelve (12) times (the amended agreement, hereinafter, "Agreement of Sale") prior to closing in June 2018.[1]

---

[1] A copy of the Agreement of Sale is attached to the Second Amended Complaint (the "Complaint") filed by the Town against certain of the Debtors. The Complaint is attached as **Exhibit "1"** to the Objection of the Town of Sykesville to Debtors' Motion for an Order Approving and Authorizing Rejection of Reversion Agreement, filed on May 1, 2024 (ECF 52).

2

4. The Agreement of Sale included a number of parcels of land designated alphabetically, including the Property that is the subject of the Sale Motion. The Agreement of Sale further specified that purchaser had proposed a Preliminary Concept Plan for the property. In the Eleventh Amendment to the Agreement of Sale, effective December 15, 2017, the fourth recital of the Agreement of Sale was amended in its entirety to state:

> WHEREAS, Purchaser intends to develop the Property as mixed use development, consistent with modern planning and development practices, providing for an *employment center (including office, light industrial, research and development and business incubation space), with a complimentary blend of retail space and residential units*, with the further goal of preservation and adaptive re-use of existing historic buildings and enhancement of the Town's employment base…"

(emphasis added).

5. As a condition of closing, the Town had to adopt and enact all necessary amendments to the Master Plan and Zoning Ordinance as set forth in the preliminary concept plan attached to the Agreement of Sale, including all Seller-approved revisions through the date of closing. *See* Complaint ¶ 16 (citing Agr. Of Sale ¶¶ 5A(ii) & 5B(ii)).

6. As a further condition of closing, the Town had to approve TWC's Final Development Plan. At closing the Town provided a letter to the Warfield Defendants, among others, stating that the property was located in a "PEC – Planned Employment Center District. PEC Districts allow a mix of office/research/institutional/hotel industrial (20-55%), retail services (10-20%), residential (10-35%), and open space (no less than 25%) uses….Your proposed use of a mixed-use commercial and residential project would be permitted, provided that the necessary land use percentages, bulk regulations, parking regulations, and any other applicable requirements of Town, County, and State law are satisfied." *See id.* ¶ 17.

7. As demonstrated by the foregoing, the Property Warfield Center proposes to sell is only one of numerous properties owned by the Debtors that were to be developed together in a

manner consistent with the PEC concept described above. Indeed, sections 2(i) and (j) of the Agreement of Sale reflect the parties' acknowledgment that the purchaser's development of the Property must be accomplished within the context of the broader mixed-use project subject to the PEC Preliminary Plan and that such development will require close involvement by the Town and other "Government Parties."

8. Given those realities, as expressly stated in the Contract before the Court, it is surprising that Warfield Center would use the filing of a short, uninformative Sale Motion as the preliminary vehicle for informing the Court of its proposed disposition of the Property because of the backdrop of conditions and contingencies, which are not only unlikely to be met, but would also tie up the Property for nearly two (2) years, until the sale process would have to start anew.

## The Sale Motion

9. By the Sale Motion, Warfield Center seeks authority to sell the Property in a private sale to Warfield Senior Housing GP, LLC (the "Purchaser"). The Contract attached to the Sale Motion states that the Purchaser intends to use the Property to develop a senior housing project and contains the following terms:

- No auction sale process;

- Neither Warfield Center nor the proposed Purchaser were represented by a broker in the negotiation of the Contract (Contract, § 13);

- Settlement to occur no later than the later to occur of (a) 45 days from the Entitlement Expiration Date, and (b) 23 months and 15 days after the Court's entry of an Order granting the Sale Motion (Contract, § 8);

- Settlement is contingent upon the Purchaser obtaining certain "Development Approvals" (defined in the Contract of Sale to include conditional use approval from the Town's Board of Zoning Appeals and approvals from the Town's Planning Commission and Historic District Commission of a preliminary and final site plan approval for the development of a senior housing project (Contract, §§ 2(a), 9(e));

- The Purchaser will have an "Entitlement Period" until the earlier of the date on which the Purchaser obtains "Final Site Plan Approval," and 18 months (subject to extension) in which to obtain the Development Approvals (Contract, § 2(b)); and

- Initial $100,000.00 deposit (approximately .019% of the purchase price) entirely refundable unless and until Development Approvals are either granted or denied (Contract, § 1(a) and (c))

10. The Debtor has alleged generally, and without supporting affidavit, that Warfield Center engaged in "years of prepetition marketing efforts" and obtained "feedback from various brokers" in its attempt to obtain a suitable contract for the sale of the Property. Sale Motion, ¶ 8. Notwithstanding the "feedback" provided to Warfield Center by "various brokers," neither Warfield Center nor the Purchaser, an entity about which scant information has been provided, were represented by a broker in negotiating the Contract. According to the Sale Motion, Warfield Center's independent efforts have yielded a Contract that not only is rife with contingencies but, even if the contingencies were satisfied -- something it knows would be generous to call speculative at best -- is unlikely to close within two (2) years of approval by this Court.

## Discussion

### The Sale Motion should be denied.

11. The Sale Motion should be denied because Warfield Center has failed to meet its burden to show it employed business judgment, much less sound business judgment, in proposing the Contract. As described above, the proposed sale is by no means certain to result in a settlement. However, it is beyond certainty that, if this Court were to approve the sale, it would be two (2) years before the fate of the Property would be known. Warfield Center was not assisted by a broker in arranging for the proposed sale, and it does not propose to solicit competitive bids in an effort to obtain a less speculative contract for the sale of the Property. Considering the risk that the proposed sale will not close and the assurance that the Property would be tied up for years

5

while the Purchaser attempts to obtain Development Approvals that likely will never be granted, approval of the sale would not be in the best interest of Warfield Center's estate.

12. Under § 363 of the Bankruptcy Code, a bankruptcy trustee may use, sell, or lease property of the bankrupt estate after notice and hearing. *See* 11 U.S.C. § 363(b). "The factors the Court must find for approval of a sale are: (i) a sound business reason justifying the sale, (ii) adequate and reasonable notice of the sale to all parties, (iii) that the sale has been proposed in good faith and (iv) that the purchase price is fair and reasonable." *In re Siskind,* 2008 WL 2705528, at *6 (Bankr. D. Md. 2008) (citing *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991)). "The history surrounding the enactment in 1978 of current Chapter 11 and the logic underlying it buttress our conclusion that there must be some articulated business justification... for using, selling or leasing property out of the ordinary course of business." *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir.1983) (the Court must "expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application."). (cited in *U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 161-162 (Bankr. D. Md. 2001)). *See also In re Family Christian LLC*, 533 B.R. 600, 626 (Bankr.W.D.Mich.2015); *In re Global Crossing Lt'd*, 295 B.R. 726, 743 (Bankr.S.D.N.Y.2003); *In re Condere Corp.*, 228 B.R. 615, 628 (Bankr.S.D.Miss.1998). The debtor has the burden of proof to show that a section 363 sale of property is justified. *See In re Flour City Bagels, LLC*, 557 B.R. 53, 77 (Bankr. W.D.N.Y. 2016).[2]

---

[2] Courts in this district have long relied on the *Lionel Corp.* decision for the proposition that, under some conditions, a debtor may obtain authority to sell all or substantially all of its assets before confirmation of a plan. *See, e.g.*, *In re Naron & Wagner, Chtd.*, 88 B.R. 85, 87-88 (Bankr. D. Md. 1988). The Court in *Naron & Wagner* observed that protections must be afforded the estate when "a preconfirmation sale of important assets is proposed…[and] appropriate notice should be a functional substitute for the adequate information which would be contained in a disclosure statement concerning the proposed transaction." *Id.*, at 88-89 (additional citations omitted). While the proposed sale does not include all of the estate's real property, it proposes to sell what by Warfield Center's admission is its most valuable asset. Under the circumstances, Warfield Center should be required to provide notice of the propriety of the proposed

13. This Court, after noting the policy behind the business judgment rule, has quoted from decisions of other courts that have listed specific elements of the business judgment rule:

> "The business judgment rule's presumption shields corporate decision-makers and their decisions from judicial second-guessing when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 656 (S.D.N.Y.1992). And a recent case provides further elaboration of what bankruptcy courts look for in determining whether proposed actions satisfy the "sound business judgment" standard. These considerations include, *inter alia:* "Is there a reasonable relationship between the [action] proposed and the results to be obtained?" and "Is the cost of the [action] reasonable in the context of the debtor's assets, liabilities and earning potential?" *In re Dana Corp.,* 358 B.R. 567, 576 (Bankr.S.D.N.Y.2006) (citations omitted).

*In re Mattress Discounters Corp.*, No. 08-21642-TJC, 2008 WL 4542989, at *5 (Bankr. D. Md. Oct. 10, 2008).

14. Further, by law, a debtor conducting a sale of assets outside of the ordinary course of business has a duty to maximize the value of those assets to the estate. *Family Christian*, 533 B.R. at 621-22. In assessing value, the debtor must weigh factors other than the proposed purchase price, such as "contingencies, conditions, timing, or other uncertainties. . . ." *Id*. (explaining considerations that a debtor exercising business judgment faces in weighing competing offers in an auction sale) (citing *In re Scimeca Found., Inc.,* 497 B.R. 753, 779 (Bankr. E.D. Pa. 2013) (approving somewhat lower all-cash bid instead of higher bid with financing contingency) and *In re Bakalis,* 220 B.R. 525, 532–33 (Bankr. E.D.N.Y. 1998) (approving lower bid instead of higher bid with contingencies and inherent risk)).

15. *In re G.S. Distribution, Inc.,* 331 B.R. 552 (Bankr. S.D.N.Y. 2005), is instructive. There, the bankruptcy court found that a bankrupt jeweler had failed to demonstrate that a proposed

---

sale that more closely resembles a *Naron & Wagner* notice than the vague and conclusory description of the sale contained in the Sale Motion.

7

private sale of more than 1,000 pieces of jewelry with a wholesale value of over $5 million was based on sound business judgment or in the best interests of the estate. The Court reasoned that the debtor offered "numbers purporting to be a business plan but containing no substantive analysis of business justifications, risks, costs, or anticipated benefits of the proposed private sales. These materials had no more probative value than [the owner's] vague testimony as to business advice received on the sales from a 'public relations' advisor." *Id.* at 559-60. Further, it was "clear that the private sales depended on the availability of agents who have a 'book' of names of potential clients, but no evidence exists demonstrating that [the debtor's owner] has access to any book of customers or that he knows someone with such a book." *Id.* at 560. Still further, the debtor had failed to show how selling the jewelry in private sales was in the best interests of the estate, particularly when it was opposed by the manufacturer of the jewelry and the estate's largest creditor. *See id.* As such, the section 363 private sale was not approved. *See id.*

16. Likewise, Warfield Center here has failed to meet its burden to produce evidence from which this Court could make express findings that proper procedures and sound business judgment supported its application. Rather, the Sale Motion contains the conclusory allegation that the Purchaser is "an independent third party and is not related to any of the Debtors, or any of their principals or officers." Sale Motion, ¶ 12. In addition to the lack of any meaningful disclosure concerning the identity of the Purchaser or any past dealings the Purchaser or its insiders may have had with the Debtors, the Sale Motion does not contain any information from which the Court could determine whether the Purchaser has the means or any ability to satisfy the contingencies contained in the Contract concerning the Development Approvals, the satisfaction of which is largely controlled by governmental bodies beyond the Purchaser's control. This is compounded by the Debtor's knowledge that a previous request by the "Warfield Companies" to

amend the PEC zoning district after closing on the Sale Agreement had failed. Warfield Center, therefore, has articulated no business justification, let alone a sound business reason, for rushing to sell its most valuable asset in a private sale without adequately testing the market to determine whether a sale of the same property could be obtained on terms more favorable to the estate.

17. Further, while Warfield Center proposes a sale for a purchase price which, on its face, is greater than the Town's claim secured by the Property, this does not change the result that the Sale Motion should be denied. As noted above, the purchase price must be weighed together with other relevant factors. Applying these principles, the Contract is subject to such significant contingencies and risk that there has been no showing by Warfield Center of a likelihood that satisfaction of these conditions to closing will ever occur, and the Contract would result in no benefit to the estate for years even if those contingencies were met. *See In re Netfax, Inc.*, 335 B.R. 85, 91 (D. Md. 2005) (noting Bankruptcy Court, in approving a trustee sale, concluded that "the most important factor is the likelihood that we will generate, and the certainty that we will generate within a reasonable time, a recovery for the creditors, and to pay the creditors in full.").

18. Because Warfield Center is attempting to proceed by a Sale Motion filed approximately three (3) weeks after the Petition Date, and without the transparency of a sale process that encourages the participation of competitive bidders, this Court has no way of determining whether the proposed sale reflects the highest and best offer that could be obtained for the Property. Instead, similar to the vague advice from an advisor found insufficient in *G.S. Distribution,* Warfield Center essentially asks the Court to take its word for the proposition that the "years of prepetition marketing efforts" and "feedback from various brokers" have produced the best offer for the Property that could be obtained. Where the proffered Contract will burden the estate with years of delay and there has been no showing of any certainty that its approval will

provide any benefit to the estate, the Town submits that the proposed sale process not reflect a sound business judgment made in a good faith attempt to act in the best interest of Warfield Center's estate. The Sale Motion should be denied.

## Conclusion

WHEREFORE, for the foregoing reasons, The Town of Sykesville, respectfully requests that the Court enter an Order denying the Sale Motion and granting The Town of Sykesville such other and further relief as the Court may deem just and appropriate.

Dated: May 8, 2024

/s/ Bradley J. Swallow
Bradley J. Swallow, Bar No. 11250
Eric S. Schuster, Bar No. 03417
FUNK & BOLTON, P.A.
100 Light Street, Suite 1400
Baltimore, Maryland 21202
410.659.8320 (telephone)
410.659.7773 (facsimile)
bswallow@fblaw.com

Counsel for The Town of Sykesville

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of May 2024, a copy of the foregoing Objection of the Town of Sykesville to Debtor Warfield Center, LLC's Motion for an Order Approving Sale of Real Property Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f) was served electronically by the Court's CM/ECF system on the following:

Michael J. Lichtenstein, Esquire mjl@shulmanrogers.com
Lynn A. Kohen, Esquire lynn.a.kohen@usdoj.gov
US Trustee – Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV
Robert B. Scarlett, Esquire RScarlett@ScarlettCroll.com,
krynarzewski@scarlettcroll.com, scarlettrr64434@notify.bestcase.com

/s/ Bradley J. Swallow
Bradley J. Swallow

52050.043: 235206

11