Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF MARYLAND

3    Case No. 24-12500-lss

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    WARFIELD HISTORIC PROPERTIES, LLC,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11                   United States Bankruptcy Court

12                   6500 Cherrywood Lane

13                   Greenbelt, MD 20770

14

15

16                   August 7, 2024

17                   11:00 a.m.

18

19

20

21   B E F O R E :

22   HON LORI S. SIMPSON

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  GLORIA BELLMAN

Page 2

1    HEARING re 44 Motion to Sell and Notice of Motion filed by

2    Debtor Warfield Historic Properties, LLC, Jointly

3    Administered Debtor Warfield Center, LLC, Jointly

4    Administered Debtor Warfield Historic Quad, LLC, Jointly

5    Administered Debtor Warfield Properties, LLC, Jointly

6    Administered Debtor Warfield Restorations, LLC,

7

8    HEARING re 57 Objection filed by Creditor The Town of

9    Sykesville

10

11   HEARING re 78 Exhibit/Witness List filed by Creditor The

12   Town of Sykesville

13

14   HEARING re 79 Exhibit/Witness List filed by Creditor The

15   Town of Sykesville

16

17   HEARING re 82 Response filed by Debtor Warfield Historic

18   Properties, LLC

19

20   HEARING re 83 Exhibit/Witness List filed by Debtor Warfield

21   Historic Properties, LLC, Jointly Administered Debtor

22   Warfield Center, LLC, Jointly Administered Debtor Warfield

23   Historic Quad, LLC, Jointly Administered Debtor Warfield

24   Properties, LLC, Jointly Administered Debtor Warfield

25   Restorations, LLC

1    HEARING re 84 Exhibit/Witness List filed by Debtor Warfield

2    Historic Properties, LLC, Jointly Administered Debtor

3    Warfield Center, LLC, Jointly Administered Debtor Warfield

4    Historic Quad, LLC, Jointly Administered Debtor Warfield

5    Properties, LLC, Jointly Administered Debtor Warfield

6    Restorations, LLC,

7

8    HEARING re 86 Objection filed by Creditor The Town of

9    Sykesville)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    SHULMAN ROGERS, P.A.

4         Attorneys for the Warfield Center, LLC, et al.

5         12505 Park Potomac Avenue, Sixth Floor

6         Potomac, MD 20854

7

8    BY:  MICHAEL J. LICHTENSTEIN

9

10   FUNK & BOLTON, P.A.

11        Attorneys for the Town of Sykesville

12        100 Light Street, Suite 1400

13        Baltimore, MD 21202

14

15   BY:  BRADLEY J. SWALLOW

16

17   UNITED STATES DEPARTMENT OF JUSTICE

18        Attorneys for the U.S. Trustee

19        6500 Cherrywood Lane

20        Greenbelt, MD 20770

21

22   BY:  LYNN KOHEN

23

24

25

Page 5

1    SCARLETT & CROLL, P.A.

2         Attorneys for Jonathan Herman

3         201 N Charles Street, Suite 600

4         Baltimore, MD 21201

5

6    BY:  ROBERT SCARLETT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                          I N D E X

2    CLOSING ARGUMENTS                                    PAGE

3    Michael Lichtenstein                                 7

4    Bradley Swallow                                      15

5

6

7    WITNESS(ES):          DX    CX    RD    RX

8

9

10

11

12                      E X H I B I T S

13   EXHIBIT NO.                                          PAGE

14                      (None marked.)

15

16

17

18

19

20

21

22

23

24

25

Page 7

1              P R O C E E D I N G S

2              CLERK:  Silence, please, and come to order.  The

3      United States Bankruptcy Court for the District of Maryland

4      is now in session.  The Honorable Lori S. Simpson presiding

5      over the following video conference hearing.

6              On the 11:00 docket, the case of Warfield Historic

7      Properties, LLC and Warfield Center, LLC, case number 24-

8      12500.

9              Counsel, please identify yourself for the record

10     beginning with the Movant debtor followed by Respondent

11     creditor and all other counsel.

12             MR. LICHTENSTEIN:  Good morning, Your Honor.

13     Michael Lichtenstein for the debtor, and Roger Conley and

14     Steven McCleaf are also on the line, Your Honor.

15             THE COURT:  Good morning to each of you.

16             MR. LICHTENSTEIN:  Good morning.

17             MR. SWALLOW:  Good morning, Your Honor.  Bradley

18     Swallow, counsel to the Town of Sykesville.  Mayor Stacy

19     Link; the town manager, Joe Cosentini; and my co-counsels,

20     Lee Rauch and Elissa Levan are also on the line.

21             THE COURT:  Good morning to each of you.

22             All right.  We are here for closing argument.  So

23     Mr. Lichtenstein, I will hear from you first.

24             MR. LICHTENSTEIN:  Thank you, Your Honor.

25             Your Honor, the debtor, Warfield Center, LLC, has

Page 8

```
 1   moved this Court for an order approving the sale of Parcel

 2   B.  The debtor exercised its business judgment, has met its

 3   burden, we believe, to approve a sale under Section 363 for

 4   to the proposed purchaser.

 5          Your Honor will recall that Steven McCleaf, the

 6   debtor's senior vice president and chief development

 7   officer, testified at the hearing, and the Court also

 8   admitted the proposed sale agreement.

 9          Your Honor, I'm first going to review the

10   uncontradicted evidence which disposed of nearly all of the

11   town's objections that were set forth in their pleading that

12   they filed.

13          The evidence showed that the debtors own and

14   operate 63-plus acres, and that includes Parcel B, the

15   parcel at issue, which is the 3.42-acre parcel of unimproved

16   land.

17          The debtors entered into a contrast with an

18   interested purchaser for the property for the price of

19   $5,250,000, contingent upon bankruptcy court approval.

20          The evidence showed that Sykesville is the holder

21   of a million-dollar note secured by a deed of trust on the

22   property, and Mr. McCleaf testified additionally that there

23   is less than $500,000 of unsecured debt.

24          Mr. McCleaf also testified that in the debtor's

25   business judgment, the sale of the property is in the best
```

Page 9

```
1    interest of the creditors and the estate.  As was mentioned

2    at the hearing, the sales price will more than satisfy all

3    of the debt, both the secured debt and the unsecured debt.

4    In fact, the sales price is about three times or more than

5    the total debt that the debtors have, which will allow for a

6    successful reorganization.

7              Your Honor, the debtor submits in light of that

8    and the -- and what the additional evidence I'll review that

9    the property can be sold free and clear of liens pursuant to

10   Section 363.  We set forth in our motion that we propose

11   that the sale be approved with the Town of Sykesville's lien

12   to attach to the proceeds at this point, and we'll see what

13   happens later in the case.

14             Your Honor, Mr. McCleaf -- one of the town's

15   objections was about marketing.  Mr. McCleaf testified

16   extensively about the marketing efforts that have taken

17   place over several years.  That includes initially their

18   attention of a broker, Dennis Boyle, that almost resulted in

19   an offer to purchase Parcel B in the amount of about

20   $850,000.

21             Mr. McCleaf testified about the extensive use of

22   social media, including LinkedIn and Facebook, a CoStar

23   listing since 2017, billboard signage, a large mailing list,

24   a landline, and Mr. McCleaf's continuing marketing efforts.

25             Mr. McCleaf testified that he started
```

Page 10

1    communicating with the proposed purchaser initially in 2022,

2    which resulted in the present contract.  The testimony was

3    that there have been no other offers for this property, Your

4    Honor.

5            Mr. McCleaf then testified about the lack of

6    relationship between the purchaser and the debtors and made

7    it clear that neither of the joint-venture partners

8    (indiscernible) purchaser have any relationship with the

9    debtors or any of their principles.

10           He stated further that the debtor is an unrelated

11   entity with whom he had negotiated the sales contract, and

12   he also testified about (indiscernible) extensive experience

13   and resources.

14           Your Honor, the contract to purchase land has some

15   contingencies related to land-use approval.  Mr. McCleaf

16   testified about his extensive experience in commercial real

17   estate over many, many years, and he noted that commercial

18   real estate development contracts conditioned on government

19   approval are extremely common in the development business,

20   particularly those contingent on land use approvals.

21           And in fact, he testified that with respect to

22   another parcel that was previously sold in the Warfield

23   development, there were very similar approvals required

24   under that contract, the park site at Warfield project.

25           Mr. McCleaf stated that the vast majority of land

Page 11

1   sales that he has seen in his career as a property developer

2   have been contingent upon approvals, and he also testified,

3   Your Honor, that he believes that approvals could be

4   obtained in as few as 11 months.

5            Moreover, he pointed out that the contract has

6   aggressive approval hurdles: timelines with deposits

7   increasing and becoming nonrefundable as the purchaser moves

8   through the land use approval process.

9            Mr. McCleaf also testified that upon exit from

10  bankruptcy, the debtor intends to seek a refinancing, which

11  could result in an even quicker repayment of the town's

12  promissory note.

13           Your Honor, I'm going to address the remaining

14  objections that Sykesville entered with respect to the

15  timing of approvals and what's required.

16           Sykesville objected on the grounds that, in part,

17  that the town asserts that the sale is unlikely to settle

18  within two years because of certain development approvals

19  that are required.

20           First of all, Your Honor, I think it's important

21  to note that no land use application or plan for a senior

22  living facility has even been produced or submitted by the

23  purchaser to the town, so there cannot be and was not any

24  evidence that any such plan could or would be denied.

25           There was a lot of discussion and questions about

Page 12

```
 1    planning and the zoning amendment, whether you need a zoning
 2    amendment or not, whether the ordinance needs to be amended.
 3    But it's really important to remember that nothing has been
 4    submitted at this point.
 5            In fact, Mr. McCleaf testified that the exhibit to
 6    the sales contract that Mr. Rauch showed him -- which
 7    pointed out there was a diagram of senior living -- was
 8    something that Mr. McCleaf had produced and not the
 9    purchaser.  The purchaser has not even submitted or come up
10    with plans, and they have not been.
11            The town manager acknowledged that no
12    determination has been made to withhold approval related to
13    senior living on Parcel B.  As the town's counsel pointed
14    out to Mr. McCleaf, Exhibit B to the sale agreement
15    indicates the purchaser's plan to build a multi-story senior
16    living project.  That project anticipates various types of
17    senior living and support services offering an integrated
18    continuum of care to customers.
19            While not originally shown on the preliminary PEC
20    plan, Mr. McCleaf testified that senior living is consistent
21    with the PEC zoning ordinance as a conditional use.
22            Your Honor, the planned employment center district
23    ordinance with respect to which the Court said it could take
24    judicial notice, includes a section on non-residential
25    conditional uses, which is Section 180-137, various approved
```

1    uses, including adult daycare centers, assisted living

2    facilities, nursing homes, and congregate care facilities.

3    In light of the foregoing, the debtor submits that no zoning

4    amendment is required for senior housing that the purchaser

5    plans to build.

6            However, there was a lot of discussion about this

7    ordinance, and even if there were a question about whether

8    independent living -- which is not defined anywhere or

9    mentioned anywhere in the ordinance, Your Honor.  Whether

10   independent living falls within the ordinance or not, or any

11   other ambiguity exists, there's a process under the

12   ordinance to resolve such issues.

13           Section 180-137B mandates that any proposed

14   conditional use not covered by the ordinance must be

15   reviewed by the planning commission and then presented to

16   the Board of Zoning Appeals.  The Board of Zoning Appeals

17   has final authority to approve or deny any conditional use.

18           Therefore, Your Honor, I think it's important to

19   note that if there were some ambiguity about independent

20   living, for example, neither the town manager nor the mayor

21   whom the town a manger characterized in his testimony as a

22   figurehead with no authority, nor the town counsel have the

23   power to decide on proposed conditional uses.  That is the

24   decision of the Board of Zoning Appeals, which is a

25   different body.

1          Lacking this authority, the town could not

2     possibly predict or try to determine the outcome of any land

3     use application or plan that has not yet been submitted.

4     It's simply not the mayor, town counsel, or town manager's

5     decision, and I would just repeat, Your Honor, again, that

6     no land use application or plan for a senior living facility

7     has even been produced or submitted by the purchaser.

8          So Your Honor, we don't believe that the Court

9     should pay any attention to the town's attempts here to

10    create a smokescreen about what approvals will not be

11    granted or may take a long time since nothing has been

12    submitted at this point.

13         What we believe the Court should focus on are the

14    requirements that the debtor exercise its business judgment,

15    act in good faith, have a proposal that benefits the estate

16    -- and, Your Honor, this contract clearly benefits the

17    estate as it's going to pay everybody in full.

18         And for all of those reasons, Your Honor, we would

19    respectfully request that the Court would overrule the

20    town's objection and enter the order approving the sale.

21         Thank you, Your Honor.

22         THE COURT:  Thank you, Mr. Lichtenstein.

23         Mr. Swallow, who will be giving closing for your

24    team?

25         MR. SWALLOW:  (Indiscernible), Your Honor.  I will

Page 15

```
 1    address the Court.

 2              Thank you.  Your Honor, as Mr. Lichtenstein

 3    correctly pointed out, it is the debtor's burden this

 4    morning to demonstrate that the proposed sale is an exercise

 5    of the debtor's sound business judgment.

 6              When I addressed the Court on Monday afternoon, I

 7    told the Court that sound business judgment includes the

 8    determination that there are sound business reasons to

 9    support the sale if the sale is (indiscernible) adequately

10    reasonable notice, the sale practice fair and reasonable,

11    and the sale is proposed in good faith.

12              In a situation like this one where the contract

13    has contingencies, it's also important to consider the

14    likelihood that the sale will settle within a reasonable

15    time and provide value to the estate.

16              And lastly, Your Honor, I believe I mentioned that

17    it's not the town's burden this morning to demonstrate that

18    the proposed sale is not a sound exercise of good business

19    judgment by the debtor but that the debtor has to

20    demonstrate that in fact it is.

21              When I addressed the Court on Monday afternoon, it

22    didn't occur to me that we were going to be dealing with an

23    issue of adequate and reasonable notice, but that became

24    clear in the course of Mr. McCleaf's testimony, as alluded

25    to by Mr. Lichtenstein in his argument a moment ago.
```

Page 16

```
 1              We spent considerable time looking at the contract
 2    that was put forward in April when this motion was filed,
 3    and that contract contained in Exhibit B on page 0039 of
 4    Exhibit M-1, and it had a (indiscernible) B on page 4, and
 5    Provision 2-A on page 6 that said Exhibit B is the, in one
 6    case, the concept plan and the second case the preliminary
 7    site plan or the project that the purchaser planned to
 8    develop.
 9              That site plan shows that on floors three and six
10    -- three through six of the proposed development, the units
11    that would be put on the project would be I, L, or
12    independent living units.
13              When Mr. McCleaf took the stand, he said, "Oh, the
14    contract the purchaser signed incorporating that site plan
15    as the plan for the development that the purchaser plans to
16    pursue, that's not really the site plan.  That's just a
17    marketing paper that Warfield uses.
18              If that's the case, Your Honor, we don't have a
19    site plan to evaluate when looking at the contract of sale.
20    Even though three months have passed, we never knew until
21    Monday that what we thought the purchaser was proposing to
22    develop isn't really the site plan at all, and that there is
23    no site plan attached to the contract.
24              Now, Mr. McCleaf continued in this testimony to
25    say that what the purchaser really intends to do is develop
```

Page 17

1    a continuing care series of units on those floors.

2              Now, the term "continuing care" is not a term that

3    is found anywhere else in the contract, and Your Honor has

4    had a chance in the last few days to see the zoning statute

5    that governs the project that we're talking about.

6    Continuing care is neither permitted nor comital use under

7    that zoning statute, and if it isn't a permitted use, it's a

8    prohibited use.

9              What we don't have, Your Honor, in light of the

10   fact that Mr. McCleaf is now disavowing the exhibit that's

11   purporting to be the development plan or the purchaser's

12   development is testimony from the purchaser.

13             At this point, I think everybody would like to

14   know what the purchaser thinks the development is going to

15   be because obviously if you sign a purchase contract that

16   has a preliminary concept planned that says we're going to

17   put an independent living facility on Parcel B, that doesn't

18   mean that's what we're really going to do.

19             Where we are now is that we either have a

20   development plan that is reflected in the concept plan, in

21   which case the purchaser is going to add 116 new residential

22   units to the PEC which, as both Mr. McCleaf and Mr.

23   Cosentini testified, is in excess of the 36 units that

24   currently are permitted under the PEC zoning, or Mr.

25   McCleaf's testimony is that the concept plan was really just

Page 18

```
 1    a Warfield marketing document, and so nobody knows what the
 2    purchaser plans to do with this property if the board
 3    approves the sale.
 4              For those reasons alone, Your Honor, we haven't
 5    been given any notice if Mr. McCleaf and Mr. Lichtenstein
 6    are to be believed at what this purchase contract really is,
 7    and we didn't know that until Monday afternoon when Mr.
 8    McCleaf testified.
 9              Turning to the development approvals, Mr. McCleaf
10    testified that he believes that the use, whatever that may
11    be for this project to be developed by the purchaser, is
12    permitted under the current PEC zoning, and he said that
13    "we" can change the PEC plan.  That testimony was vague and
14    unsupported.
15              He admitted that the phrase "senior living doesn't
16    appear in the zoning text, and that when the PEC concept
17    plan that was approved back when the Warfield debtors
18    required titles to the various parcels that they had, the
19    use for Parcel B was thought to be a retail use such as a
20    hotel, and the website that Warfield had, Mr. McCleaf
21    testified, even said that there isn't a hotel with a 10-mile
22    radius of Parcel B.
23              The contract states and Mr. McCleaf admitted that
24    there were going to need to be various development approvals
25    in order for the proposed use to be -- to be allowed.  And
```

Page 19

```
 1    now we don't even know what that proposed use is if it were
 2    going to be in connection with the concept plan that was
 3    attached to the contract of sale.  The conditional use that
 4    the parties claimed that there would be in order to do what
 5    they want to do with the project wouldn't be enough.  They
 6    would need a Zoning (indiscernible) amendment to make way
 7    for all the additional residential units that would be
 8    developed on floors three through six.
 9              But in order to get the settlement that the
10    purchaser and the debtor claim they need in order to pursue
11    what their plan is, we do know that there's going to be a
12    period of approximately 22 months when the town is held at
13    bay waiting for action by the purchaser.
14              That 22-month period is referred to in the contact
15    as an entitlement period, but I think it's important to be
16    clear that the debtor is not entitled to any of the
17    approvals or changes to the PEC zoning that they need in
18    order to get this project done.  Rather, the town is
19    entitled to have the PEC as a whole developed pursuant to a
20    well-thought-out design in accordance with a strategic
21    vision and in a way that's harmonious and synergetic between
22    the different land uses on the various parcels.
23              When the parcels were sold to the Warfield
24    debtors, they knew that they were subject to the PEC zoning.
25    And so to come to now and claim that they can change the
```

Page 20

```
 1    zoning if they need to is not -- is not something the Court
 2    should countenance.
 3              The last thing I would say about the entitlement
 4    period is that there is no risk to the purchaser or the town
 5    during this time.  The deposit that Mr. Lichtenstein
 6    refereed to is $100,000.  When you compare that $100,000 to
 7    the $5.25 million proposed purchase price, it is a drop in
 8    the bucket.
 9              And if you scrutinize the language of Section 1(c)
10    of the contract, that purchase -- or that deposit is never
11    nonrefundable unless development approvals are granted.  And
12    in this case, since we now know that we don't know what the
13    purchaser proposes to do with the project, we don't even
14    know which development approvals are needed or whether the
15    contract adequately foresees the ones that they need to get
16    during this entitlement period.
17              So Your Honor, all of the risk, if the Court
18    approves this contact, would be on the Town of Sykesville.
19    And you heard testimony from Mr. Cosentini that the town is
20    not going to be able to consider a development plan for
21    Parcel B in isolation.  It has to consider the development
22    plan for all the parcels as a whole.
23              We went through this process before the debtors
24    acquired title to the other parcels.  There is a four-year
25    process that resulted in the agreement upon the PEC concept
```

Page 21

1    plan.  Two years ago, the debtors tried and failed to change

2    the zoning in the PEC district to increase residential

3    density, and it didn't pass.  There's no reason to think

4    that a plan like the one that was outlined on Exhibit B to

5    the contract that requires an increase in residential

6    density would pass any more today than it did then.

7              But what we do know is that if Parcel B is going

8    to proceed with this contract and this proposed purchaser,

9    there's going to need to be a plan for development as a

10   whole, and I would refer Your Honor to Section 180-134, the

11   preparatory provision in the zoning statute.  That contains

12   all of the outlines of what the town expects its Planned

13   Employment Center district to look like when it's fully

14   developed.

15             To boil it down into some short phrases, there

16   needs to be a demonstration that this use for Parcel B

17   together with all the other uses will produce a cohesive,

18   integrated employment zone where the land uses are

19   compatible vis-à-vis one another.

20             We have no evidence of what the debtors propose to

21   do with the other parcels.  In fact, Mr. McCleaf said that

22   right now there isn't a plan.  He merely said in his

23   testimony that if the Court approves the contract, then by

24   the time the purchaser seeks its development approvals, then

25   the Warfield debtors will certainly come with their plan to

1    support it.  But now that we're not even sure what the

2    purchaser proposes to do with Parcel B, it's hard to know

3    what development tools a purchaser needs and how long it

4    will take to get them.

5          While this time passes, what we do know is that

6    the other parcels are continue to -- are going to continue

7    to stagnate.  The development will not move forward, and the

8    Parcel B historic structures will continue to be neglected.

9    They will not get the stabilization and rehabilitation that

10   they need from the debtors who have defaulted on their

11   obligations on the agreements that we discussed on Monday

12   afternoon so that all of the risk, if this contract is

13   approved, falls on the town, and none belongs to the debtor

14   or the purchaser.

15          So for all these reasons, Your Honor, the Town of

16   Sykesville urges the Court to deny the motion to approve the

17   sale as not a reflection of the sound business judgment of

18   these debtors.

19          Town of Sykesville is not only the largest

20   creditor in the case but the most significant stakeholder as

21   it is the zoning authority with the obligation to its

22   constituents to make sure that there's a cohesive

23   development in the PEC district, and these debtors have not

24   shown that approval of this contract will benefit the town.

25   It also failed to show that it is a contract that is likely

```
 1    to result in a settlement within a reasonable time and

 2    return value to the estate.

 3              So for those reasons, we ask the Court to deny the

 4    motion.

 5              THE COURT:  Thank you.  I appreciate all counsels'

 6    presentations and argument in this case.  I am going to take

 7    the matter under advisement.  I don't sit on things very

 8    long, but I do want to take some time to review everything

 9    carefully and give this the consideration that it requires.

10              So I will be in touch with you.  I'll either issue

11    something written or Ms. Bellman will reach out if I decide

12    to do an oral ruling, and we will get moving on it.  It

13    won't sit.

14              MR. LICHTENSTEIN:  Your Honor --

15              MR. SWALLOW:  May I ask the Court a question?  Oh,

16    let Mr. Lichtenstein, speak.

17              THE COURT:  Yes.

18              MR. LICHTENSTEIN:  I was just going to say may I

19    have a brief rebuttal?

20              THE COURT:  Yes.  Yes, yes, yes.  You can have a

21    brief rebuttal.  Sorry about that.

22              MR. LICHTENSTEIN:  Thank you.

23              Brad, did you want to ask something?

24              MR. SWALLOW:  I'll wait until your rebuttal.

25              MR. LICHTENSTEIN:  Thank you.  I'll be very brief.
```

Page 24

```
 1    I just want to raise a few points, Your Honor.
 2              Number one, as Mr. Swallow said, he went through
 3    the factors required for the debtor's business judgment.
 4    The first is that the price be adequate and reasonable.
 5    Given that it's more than three times enough to pay all of
 6    the creditors in full -- which, as Your Honor knows -- is
 7    very unusual in a Chapter 11 case, I think we've meet that
 8    burden.
 9              This contract was proposed in good faith.  There's
10    no evidence that there was anything but good faith.  The
11    marketing efforts have been taken for years.  This is the
12    only contract that has resulted.
13              And the third factor is adequate notice that
14    there's no issue about.
15              And so I think we've clearly met the burden of
16    proof in terms of exercising the business judgment.
17              Mr. Swallow very creatively tried to make an
18    argument that maybe there wasn't adequate notice because
19    they thought it was senior living, and they're not really
20    sure what it is.
21              But the reality is that I know the judge will --
22    the Court will look at the contract again.  And if you look
23    at page 4, it says on page 4 of the contract, "Purchaser
24    intends developing the property as senior housing."  There's
25    no question.  This is not some surprise all of a sudden.
```

Page 25

```
 1            And what Mr. McCleaf simply said was that he was
 2    the one who created that exhibit.  He didn't say that that
 3    is not what they intend on doing.  In fact, on page 4, it
 4    says here a copy of the proposed concept plan is attached as
 5    Exhibit B.
 6            So there's no issue here that they plan on having
 7    senior housing, and the debtor's perspective is that no
 8    zoning changes are needed.  Town has a different view, but
 9    as I said before, the town's not the one who gets to decide.
10    If there are any disputes or issues about it, it goes to the
11    Board of Zoning Appeals.
12            And Your Honor, I don't believe, respectfully,
13    that it's an issue for this Court, the bankruptcy court, to
14    be deciding when they haven't even submitted a plan yet.
15            And finally, with respect to what the debtor plans
16    to do on the other parcels has nothing to do with the sale
17    that's before the Court today.  And Your Honor, we'd
18    respectfully request that the Court enter the order
19    approving the sale so it can go forward.
20            Thank you.
21            THE COURT:  Thank you, Mr. Lichtenstein.
22            And Mr. Swallow, your question?
23            MR. SWALLOW:  Yes, Your Honor.  It occurred to me
24    that we didn't have any evidence during the hearing on
25    Monday about the need for a waiver of the 6004 stay given
```

Page 26

```
 1      that this is a contract that, if it settles at all, could

 2      settle as late as two years from the date of today's

 3      hearing.

 4              We don't think there's any urgency to waiving a

 5      stay.  We haven't heard a reason why the stay should be

 6      waived.  And we would argue that there's no cause to do it,

 7      so I just wanted to put that out there.

 8              I'm not going to re-rebut what Mr. Lichtenstein

 9      just said.  I'll stand with what I've already told Your

10      Honor as our closing, but I would urge Your Honor to

11      consider the issue of whether it's appropriate to waive the

12      stay while you're deliberating on the main points of the

13      motion.

14              THE COURT:  Thank you.  All right.  I will be in

15      touch as soon as I have a timeframe in mind.  And again, I

16      appreciate everybody's participation.  It was well presented

17      and has given me a lot to think about.

18              MR. LICHTENSTEIN:  Thank you, Your Honor.

19              MR. SWALLOW:  Thank you, Your Honor.

20              THE COURT:  Thank you.

21              MR. SWALLOW:  Thank you.

22              MR. LICHTENSTEIN:  thank you.

23              CLERK:  Court is adjourned.

24              (Whereupon these proceedings were concluded at

25      11:28 a.m.)
```

1          C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 21, 2024

**&**

**&**   4:10 5:1

**0**

**0039**   16:3

**1**

**1**   16:4 20:9
**10**   18:21
**100**   4:12
**100,000**   20:6,6
**11**   11:4 24:7
**11501**   27:23
**116**   17:21
**11:00**   1:17 7:6
**11:28**   26:25
**12151**   27:6
**12500**   7:8
**12505**   4:5
**1400**   4:12
**15**   6:4
**180-134**   21:10
**180-137**   12:25
**180-137b**
  13:13

**2**

**2**   16:5
**201**   5:3
**2017**   9:23
**2022**   10:1
**2024**   1:16
  27:25
**20770**   1:13
  4:20
**20854**   4:6
**21**   27:25
**21201**   5:4

**21202**   4:13
**22**   19:12,14
**24**   7:7
**24-12500**   1:3

**3**

**3.42**   8:15
**300**   27:22
**330**   27:21
**36**   17:23
**363**   8:3 9:10

**4**

**4**   16:4 24:23,23
  25:3
**44**   2:1

**5**

**5,250,000**   8:19
**5.25**   20:7
**500,000**   8:23
**57**   2:8

**6**

**6**   16:5
**600**   5:3
**6004**   25:25
**63**   8:14
**6500**   1:12 4:19

**7**

**7**   1:16 6:3
**78**   2:11
**79**   2:14

**8**

**82**   2:17
**83**   2:20
**84**   3:1
**850,000**   9:20

**86**   3:8

**a**

**a.m.**   1:17 26:25
**able**   20:20
**accordance**
  19:20
**accurate**   27:4
**acknowledged**
  12:11
**acquired**   20:24
**acre**   8:15
**acres**   8:14
**act**   14:15
**action**   19:13
**add**   17:21
**additional**   9:8
  19:7
**additionally**
  8:22
**address**   11:13
  15:1
**addressed**   15:6
  15:21
**adequate**
  15:23 24:4,13
  24:18
**adequately**
  15:9 20:15
**adjourned**
  26:23
**administered**
  2:3,4,5,6,21,22
  2:23,24 3:2,3,4
  3:5
**admitted**   8:8
  18:15,23

**adult**   13:1
**advisement**
  23:7
**afternoon**   15:6
  15:21 18:7
  22:12
**aggressive**
  11:6
**ago**   15:25 21:1
**agreement**   8:8
  12:14 20:25
**agreements**
  22:11
**al**   4:4
**allow**   9:5
**allowed**   18:25
**alluded**   15:24
**ambiguity**
  13:11,19
**amended**   12:2
**amendment**
  12:1,2 13:4
  19:6
**amount**   9:19
**anticipates**
  12:16
**appeals**   13:16
  13:16,24 25:11
**appear**   18:16
**application**
  11:21 14:3,6
**appreciate**
  23:5 26:16
**appropriate**
  26:11
**approval**   8:19
  10:15,19 11:6

11:8 12:12
22:24
**approvals**
10:20,23 11:2
11:3,15,18
14:10 18:9,24
19:17 20:11,14
21:24
**approve** 8:3
13:17 22:16
**approved** 9:11
12:25 18:17
22:13
**approves** 18:3
20:18 21:23
**approving** 8:1
14:20 25:19
**approximately**
19:12
**april** 16:2
**argue** 26:6
**argument** 7:22
15:25 23:6
24:18
**arguments** 6:2
**asserts** 11:17
**assisted** 13:1
**attach** 9:12
**attached** 16:23
19:3 25:4
**attempts** 14:9
**attention** 9:18
14:9
**attorneys** 4:4
4:11,18 5:2
**august** 1:16
27:25

**authority**
13:17,22 14:1
22:21
**avenue** 4:5

**b**

**b** 1:21 6:12 8:2
8:14 9:19
12:13,14 16:3
16:4,5 17:17
18:19,22 20:21
21:4,7,16 22:2
22:8 25:5
**back** 18:17
**baltimore** 4:13
5:4
**bankruptcy**
1:1,11,23 7:3
8:19 11:10
25:13
**bay** 19:13
**becoming** 11:7
**beginning** 7:10
**believe** 8:3
14:8,13 15:16
25:12
**believed** 18:6
**believes** 11:3
18:10
**bellman** 1:25
23:11
**belongs** 22:13
**benefit** 22:24
**benefits** 14:15
14:16
**best** 8:25
**billboard** 9:23

**board** 13:16,16
13:24 18:2
25:11
**body** 13:25
**boil** 21:15
**bolton** 4:10
**boyle** 9:18
**brad** 23:23
**bradley** 4:15
6:4 7:17
**brief** 23:19,21
23:25
**broker** 9:18
**bucket** 20:8
**build** 12:15
13:5
**burden** 8:3
15:3,17 24:8
24:15
**business** 8:2,25
10:19 14:14
15:5,7,8,18
22:17 24:3,16

**c**

**c** 4:1 7:1 20:9
27:1,1
**care** 12:18 13:2
17:1,2,6
**career** 11:1
**carefully** 23:9
**case** 1:3 7:6,7
9:13 16:6,6,18
17:21 20:12
22:20 23:6
24:7
**cause** 26:6

**center** 2:3,22
3:3 4:4 7:7,25
12:22 21:13
**centers** 13:1
**certain** 11:18
**certainly** 21:25
**certified** 27:3
**chance** 17:4
**change** 18:13
19:25 21:1
**changes** 19:17
25:8
**chapter** 24:7
**characterized**
13:21
**charles** 5:3
**cherrywood**
1:12 4:19
**chief** 8:6
**claim** 19:10,25
**claimed** 19:4
**clear** 9:9 10:7
15:24 19:16
**clearly** 14:16
24:15
**clerk** 7:2 26:23
**closing** 6:2
7:22 14:23
26:10
**cohesive** 21:17
22:22
**come** 7:2 12:9
19:25 21:25
**comital** 17:6
**commercial**
10:16,17

**commission**
13:15
**common** 10:19
**communicati...**
10:1
**compare** 20:6
**compatible**
21:19
**concept** 16:6
17:16,20,25
18:16 19:2
20:25 25:4
**concluded**
26:24
**conditional**
12:21,25 13:14
13:17,23 19:3
**conditioned**
10:18
**conference** 7:5
**congregate**
13:2
**conley** 7:13
**connection**
19:2
**consider** 15:13
20:20,21 26:11
**considerable**
16:1
**consideration**
23:9
**consistent**
12:20
**constituents**
22:22
**contact** 19:14
20:18

**contained** 16:3
**contains** 21:11
**contingencies**
10:15 15:13
**contingent**
8:19 10:20
11:2
**continue** 22:6
22:6,8
**continued**
16:24
**continuing**
9:24 17:1,2,6
**continuum**
12:18
**contract** 10:2
10:11,14,24
11:5 12:6
14:16 15:12
16:1,3,14,19
16:23 17:3,15
18:6,23 19:3
20:10,15 21:5
21:8,23 22:12
22:24,25 24:9
24:12,22,23
26:1
**contracts**
10:18
**contrast** 8:17
**copy** 25:4
**correctly** 15:3
**cosentini** 7:19
17:23 20:19
**costar** 9:22
**counsel** 7:9,11
7:18 12:13

13:22 14:4
**counsels** 7:19
23:5
**countenance**
20:2
**country** 27:21
**course** 15:24
**court** 1:1,11
7:3,15,21 8:1,7
8:19 12:23
14:8,13,19,22
15:1,6,7,21
20:1,17 21:23
22:16 23:3,5
23:15,17,20
24:22 25:13,13
25:17,18,21
26:14,20,23
**covered** 13:14
**create** 14:10
**created** 25:2
**creatively**
24:17
**creditor** 2:8,11
2:14 3:8 7:11
22:20
**creditors** 9:1
24:6
**croll** 5:1
**current** 18:12
**currently**
17:24
**customers**
12:18
**cx** 6:7

**d**

**d** 6:1 7:1
**date** 26:2 27:25
**daycare** 13:1
**days** 17:4
**dealing** 15:22
**debt** 8:23 9:3,3
9:3,5
**debtor** 1:9 2:2
2:3,4,5,6,17,20
2:21,22,23,24
3:1,2,3,4,5
7:10,13,25 8:2
9:7 10:10
11:10 13:3
14:14 15:19,19
19:10,16 22:13
25:15
**debtor's** 8:6,24
15:3,5 24:3
25:7
**debtors** 8:13
8:17 9:5 10:6,9
18:17 19:24
20:23 21:1,20
21:25 22:10,18
22:23
**decide** 13:23
23:11 25:9
**deciding** 25:14
**decision** 13:24
14:5
**deed** 8:21
**defaulted**
22:10
**defined** 13:8

deliberating
  26:12
demonstrate
  15:4,17,20
demonstration
  21:16
denied  11:24
dennis  9:18
density  21:3,6
deny  13:17
  22:16 23:3
department
  4:17
deposit  20:5,10
deposits  11:6
design  19:20
determination
  12:12 15:8
determine  14:2
develop  16:8
  16:22,25
developed
  18:11 19:8,19
  21:14
developer  11:1
developing
  24:24
development
  8:6 10:18,19
  10:23 11:18
  16:10,15 17:11
  17:12,14,20
  18:9,24 20:11
  20:14,20,21
  21:9,24 22:3,7
  22:23

diagram  12:7
different  13:25
  19:22 25:8
disavowing
  17:10
discussed
  22:11
discussion
  11:25 13:6
disposed  8:10
disputes  25:10
district  1:2 7:3
  12:22 21:2,13
  22:23
docket  7:6
document  18:1
doing  25:3
dollar  8:21
drop  20:7
dx  6:7

e

e  1:21,21 4:1,1
  6:1,12 7:1,1
  27:1
ecro  1:25
efforts  9:16,24
  24:11
either  17:19
  23:10
elissa  7:20
employment
  12:22 21:13,18
enter  14:20
  25:18
entered  8:17
  11:14

entitled  19:16
  19:19
entitlement
  19:15 20:3,16
entity  10:11
es  6:7
estate  9:1
  10:17,18 14:15
  14:17 15:15
  23:2
et  4:4
evaluate  16:19
everybody
  14:17 17:13
everybody's
  26:16
evidence  8:10
  8:13,20 9:8
  11:24 21:20
  24:10 25:24
example  13:20
excess  17:23
exercise  14:14
  15:4,18
exercised  8:2
exercising
  24:16
exhibit  2:11,14
  2:20 3:1 6:13
  12:5,14 16:3,4
  16:5 17:10
  21:4 25:2,5
exists  13:11
exit  11:9
expects  21:12
experience
  10:12,16

extensive  9:21
  10:12,16
extensively
  9:16
extremely
  10:19

f

f  1:21 27:1
facebook  9:22
facilities  13:2,2
facility  11:22
  14:6 17:17
fact  9:4 10:21
  12:5 15:20
  17:10 21:21
  25:3
factor  24:13
factors  24:3
failed  21:1
  22:25
fair  15:10
faith  14:15
  15:11 24:9,10
falls  13:10
  22:13
figurehead
  13:22
filed  2:1,8,11
  2:14,17,20 3:1
  3:8 8:12 16:2
final  13:17
finally  25:15
first  7:23 8:9
  11:20 24:4
floor  4:5
floors  16:9
  17:1 19:8

| | | | |
|---|---|---|---|
| **focus** 14:13 | **government** | 17:3,9 18:4 | **initially** 9:17 |
| **followed** 7:10 | 10:18 | 20:17 21:10 | 10:1 |
| **following** 7:5 | **governs** 17:5 | 22:15 23:14 | **integrated** |
| **foregoing** 13:3 | **granted** 14:11 | 24:1,6 25:12 | 12:17 21:18 |
| 27:3 | 20:11 | 25:17,23 26:10 | **intend** 25:3 |
| **foresees** 20:15 | **greenbelt** 1:13 | 26:10,18,19 | **intends** 11:10 |
| **forth** 8:11 9:10 | 4:20 | **honorable** 7:4 | 16:25 24:24 |
| **forward** 16:2 | **grounds** 11:16 | **hotel** 18:20,21 | **interest** 9:1 |
| 22:7 25:19 | **h** | **housing** 13:4 | **interested** 8:18 |
| **found** 17:3 | | 24:24 25:7 | **isolation** 20:21 |
| **four** 20:24 | **h** 6:12 | **hurdles** 11:6 | **issue** 8:15 |
| **free** 9:9 | **happens** 9:13 | **hyde** 3:25 27:3 | 15:23 23:10 |
| **full** 14:17 24:6 | **hard** 22:2 | 27:8 | 24:14 25:6,13 |
| **fully** 21:13 | **harmonious** | **i** | 26:11 |
| **funk** 4:10 | 19:21 | | **issues** 13:12 |
| **further** 10:10 | **hear** 7:23 | **identify** 7:9 | 25:10 |
| **g** | **heard** 20:19 | **important** | **j** |
| | 26:5 | 11:20 12:3 | |
| **g** 7:1 | **hearing** 2:1,8 | 13:18 15:13 | **j** 4:8,15 |
| **give** 23:9 | 2:11,14,17,20 | 19:15 | **joe** 7:19 |
| **given** 18:5 24:5 | 3:1,8 7:5 8:7 | **includes** 8:14 | **joint** 10:7 |
| 25:25 26:17 | 9:2 25:24 26:3 | 9:17 12:24 | **jointly** 2:2,3,4 |
| **giving** 14:23 | **held** 19:12 | 15:7 | 2:5,21,22,23 |
| **gloria** 1:25 | **herman** 5:2 | **including** 9:22 | 2:24 3:2,3,4,5 |
| **go** 25:19 | **historic** 1:7 2:2 | 13:1 | **jonathan** 5:2 |
| **goes** 25:10 | 2:4,17,21,23 | **incorporating** | **judge** 1:23 |
| **going** 8:9 11:13 | 3:2,4 7:6 22:8 | 16:14 | 24:21 |
| 14:17 15:22 | **holder** 8:20 | **increase** 21:2,5 | **judgment** 8:2 |
| 17:14,16,18,21 | **homes** 13:2 | **increasing** | 8:25 14:14 |
| 18:24 19:2,11 | **hon** 1:22 | 11:7 | 15:5,7,19 |
| 20:20 21:7,9 | **honor** 7:12,14 | **independent** | 22:17 24:3,16 |
| 22:6 23:6,18 | 7:17,24,25 8:5 | 13:8,10,19 | **judicial** 12:24 |
| 26:8 | 8:9 9:7,14 10:4 | 16:12 17:17 | **justice** 4:17 |
| **good** 7:12,15 | 10:14 11:3,13 | **indicates** 12:15 | **k** |
| 7:16,17,21 | 11:20 12:22 | **indiscernible** | |
| 14:15 15:11,18 | 13:9,18 14:5,8 | 10:8,12 14:25 | **knew** 16:20 |
| 24:9,10 | 14:16,18,21,25 | 15:9 16:4 19:6 | 19:24 |
| | 15:2,16 16:18 | | |

**[know - moved]**

| | | | |
|---|---|---|---|
| **know** 17:14 | **lien** 9:11 | **m** | **mccleaf's** 9:24 |
| 18:7 19:1,11 | **liens** 9:9 | | 15:24 17:25 |
| 20:12,12,14 | **light** 4:12 9:7 | **m** 16:4 | **md** 1:13 4:6,13 |
| 21:7 22:2,5 | 13:3 17:9 | **made** 10:6 | 4:20 5:4 |
| 24:21 | **likelihood** | 12:12 | **mean** 17:18 |
| **knows** 18:1 | 15:14 | **mailing** 9:23 | **media** 9:22 |
| 24:6 | **likely** 22:25 | **main** 26:12 | **meet** 24:7 |
| **kohen** 4:22 | **line** 7:14,20 | **majority** 10:25 | **mentioned** 9:1 |
| **l** | **link** 7:19 | **make** 19:6 | 13:9 15:16 |
| | **linkedin** 9:22 | 22:22 24:17 | **merely** 21:22 |
| **l** 16:11 | **list** 2:11,14,20 | **manager** 7:19 | **met** 8:2 24:15 |
| **lack** 10:5 | 3:1 9:23 | 12:11 13:20 | **michael** 4:8 6:3 |
| **lacking** 14:1 | **listing** 9:23 | **manager's** | 7:13 |
| **land** 8:16 | **living** 11:22 | 14:4 | **mile** 18:21 |
| 10:14,15,20,25 | 12:7,13,16,17 | **mandates** | **million** 8:21 |
| 11:8,21 14:2,6 | 12:20 13:1,8 | 13:13 | 20:7 |
| 19:22 21:18 | 13:10,20 14:6 | **manger** 13:21 | **mind** 26:15 |
| **landline** 9:24 | 16:12 17:17 | **marked** 6:14 | **mineola** 27:23 |
| **lane** 1:12 4:19 | 18:15 24:19 | **marketing** | **moment** 15:25 |
| **language** 20:9 | **llc** 1:7 2:2,3,4,5 | 9:15,16,24 | **monday** 15:6 |
| **large** 9:23 | 2:6,18,21,22 | 16:17 18:1 | 15:21 16:21 |
| **largest** 22:19 | 2:23,24,25 3:2 | 24:11 | 18:7 22:11 |
| **lastly** 15:16 | 3:3,4,5,6 4:4 | **maryland** 1:2 | 25:25 |
| **late** 26:2 | 7:7,7,25 | 7:3 | **month** 19:14 |
| **ledanski** 3:25 | **long** 14:11 22:3 | **matter** 1:5 | **months** 11:4 |
| 27:3,8 | 23:8 | 23:7 | 16:20 19:12 |
| **lee** 7:20 | **look** 21:13 | **mayor** 7:18 | **morning** 7:12 |
| **legal** 27:20 | 24:22,22 | 13:20 14:4 | 7:15,16,17,21 |
| **levan** 7:20 | **looking** 16:1 | **mccleaf** 7:14 | 15:4,17 |
| **lichtenstein** | 16:19 | 8:5,22,24 9:14 | **motion** 2:1,1 |
| 4:8 6:3 7:12,13 | **lori** 1:22 7:4 | 9:15,21,25 | 9:10 16:2 |
| 7:16,23,24 | **lot** 11:25 13:6 | 10:5,15,25 | 22:16 23:4 |
| 14:22 15:2,25 | 26:17 | 11:9 12:5,8,14 | 26:13 |
| 18:5 20:5 | **lss** 1:3 | 12:20 16:13,24 | **movant** 7:10 |
| 23:14,16,18,22 | **lynn** 4:22 | 17:10,22 18:5 | **move** 22:7 |
| 23:25 25:21 | | 18:8,9,20,23 | **moved** 8:1 |
| 26:8,18,22 | | 21:21 25:1 | |

**moves** 11:7
**moving** 23:12
**multi** 12:15

**n**

**n** 4:1 5:3 6:1
   7:1 27:1
**nearly** 8:10
**need** 12:1
   18:24 19:6,10
   19:17 20:1,15
   21:9 22:10
   25:25
**needed** 20:14
   25:8
**needs** 12:2
   21:16 22:3
**neglected** 22:8
**negotiated**
   10:11
**neither** 10:7
   13:20 17:6
**never** 16:20
   20:10
**new** 17:21
**non** 12:24
**nonrefundable**
   11:7 20:11
**note** 8:21 11:12
   11:21 13:19
**noted** 10:17
**notice** 2:1
   12:24 15:10,23
   18:5 24:13,18
**number** 7:7
   24:2
**nursing** 13:2

**ny** 27:23

**o**

**o** 1:21 7:1 27:1
**objected** 11:16
**objection** 2:8
   3:8 14:20
**objections** 8:11
   9:15 11:14
**obligation**
   22:21
**obligations**
   22:11
**obtained** 11:4
**obviously**
   17:15
**occur** 15:22
**occurred** 25:23
**offer** 9:19
**offering** 12:17
**offers** 10:3
**officer** 8:7
**oh** 16:13 23:15
**old** 27:21
**ones** 20:15
**operate** 8:14
**oral** 23:12
**order** 7:2 8:1
   14:20 18:25
   19:4,9,10,18
   25:18
**ordinance** 12:2
   12:21,23 13:7
   13:9,10,12,14
**originally**
   12:19
**outcome** 14:2

**outlined** 21:4
**outlines** 21:12
**overrule** 14:19
**own** 8:13

**p**

**p** 4:1,1 7:1
**p.a.** 4:3,10 5:1
**page** 6:2,13
   16:3,4,5 24:23
   24:23 25:3
**paper** 16:17
**parcel** 8:1,14
   8:15,15 9:19
   10:22 12:13
   17:17 18:19,22
   20:21 21:7,16
   22:2,8
**parcels** 18:18
   19:22,23 20:22
   20:24 21:21
   22:6 25:16
**park** 4:5 10:24
**part** 11:16
**participation**
   26:16
**particularly**
   10:20
**parties** 19:4
**partners** 10:7
**pass** 21:3,6
**passed** 16:20
**passes** 22:5
**pay** 14:9,17
   24:5
**pec** 12:19,21
   17:22,24 18:12
   18:13,16 19:17

19:19,24 20:25
   21:2 22:23
**period** 19:12
   19:14,15 20:4
   20:16
**permitted** 17:6
   17:7,24 18:12
**perspective**
   25:7
**phrase** 18:15
**phrases** 21:15
**place** 9:17
**plan** 11:21,24
   12:15,20 14:3
   14:6 16:6,7,9
   16:14,15,16,19
   16:22,23 17:11
   17:20,20,25
   18:13,17 19:2
   19:11 20:20,22
   21:1,4,9,22,25
   25:4,6,14
**planned** 12:22
   16:7 17:16
   21:12
**planning** 12:1
   13:15
**plans** 12:10
   13:5 16:15
   18:2 25:15
**pleading** 8:11
**please** 7:2,9
**plus** 8:14
**point** 9:12 12:4
   14:12 17:13
**pointed** 11:5
   12:7,13 15:3

**points** 24:1
26:12
**possibly** 14:2
**potomac** 4:5,6
**power** 13:23
**practice** 15:10
**predict** 14:2
**preliminary**
12:19 16:6
17:16
**preparatory**
21:11
**present** 10:2
**presentations**
23:6
**presented**
13:15 26:16
**president** 8:6
**presiding** 7:4
**previously**
10:22
**price** 8:18 9:2
9:4 20:7 24:4
**principles** 10:9
**proceed** 21:8
**proceedings**
26:24 27:4
**proceeds** 9:12
**process** 11:8
13:11 20:23,25
**produce** 21:17
**produced**
11:22 12:8
14:7
**prohibited**
17:8

**project** 10:24
12:16,16 16:7
16:11 17:5
18:11 19:5,18
20:13
**promissory**
11:12
**proof** 24:16
**properties** 1:7
2:2,5,18,21,24
3:2,5 7:7
**property** 8:18
8:22,25 9:9
10:3 11:1 18:2
24:24
**proposal** 14:15
**propose** 9:10
21:20
**proposed** 8:4,8
10:1 13:13,23
15:4,11,18
16:10 18:25
19:1 20:7 21:8
24:9 25:4
**proposes** 20:13
22:2
**proposing**
16:21
**provide** 15:15
**provision** 16:5
21:11
**purchase** 9:19
10:14 17:15
18:6 20:7,10
**purchaser** 8:4
8:18 10:1,6,8
11:7,23 12:9,9

13:4 14:7 16:7
16:14,15,21,25
17:12,14,21
18:2,11 19:10
19:13 20:4,13
21:8,24 22:2,3
22:14 24:23
**purchaser's**
12:15 17:11
**purporting**
17:11
**pursuant** 9:9
19:19
**pursue** 16:16
19:10
**put** 16:2,11
17:17 26:7

**q**

**quad** 2:4,23
3:4
**question** 13:7
23:15 24:25
25:22
**questions**
11:25
**quicker** 11:11

**r**

**r** 1:21 4:1 7:1
27:1
**radius** 18:22
**raise** 24:1
**rather** 19:18
**rauch** 7:20
12:6
**rd** 6:7

**reach** 23:11
**real** 10:16,18
**reality** 24:21
**really** 12:3
16:16,22,25
17:18,25 18:6
24:19
**reason** 21:3
26:5
**reasonable**
15:10,10,14,23
23:1 24:4
**reasons** 14:18
15:8 18:4
22:15 23:3
**rebut** 26:8
**rebuttal** 23:19
23:21,24
**recall** 8:5
**record** 7:9 27:4
**refer** 21:10
**refereed** 20:6
**referred** 19:14
**refinancing**
11:10
**reflected** 17:20
**reflection**
22:17
**rehabilitation**
22:9
**related** 10:15
12:12
**relationship**
10:6,8
**remaining**
11:13

remember 12:3
reorganization
9:6
repayment
11:11
repeat 14:5
request 14:19
25:18
required 10:23
11:15,19 13:4
18:18 24:3
requirements
14:14
requires 21:5
23:9
residential
12:24 17:21
19:7 21:2,5
resolve 13:12
resources
10:13
respect 10:21
11:14 12:23
25:15
respectfully
14:19 25:12,18
respondent
7:10
response 2:17
restorations
2:6,25 3:6
result 11:11
23:1
resulted 9:18
10:2 20:25
24:12

retail 18:19
return 23:2
review 8:9 9:8
23:8
reviewed 13:15
right 7:22
21:22 26:14
risk 20:4,17
22:12
road 27:21
robert 5:6
roger 7:13
rogers 4:3
ruling 23:12
rx 6:7

s

s 1:22 4:1 6:12
7:1,4
sale 8:1,3,8,25
9:11 11:17
12:14 14:20
15:4,9,9,10,11
15:14,18 16:19
18:3 19:3
22:17 25:16,19
sales 9:2,4
10:11 11:1
12:6
satisfy 9:2
says 17:16
24:23 25:4
scarlett 5:1,6
scrutinize 20:9
second 16:6
section 8:3
9:10 12:24,25
13:13 20:9

21:10
secured 8:21
9:3
see 9:12 17:4
seek 11:10
seeks 21:24
seen 11:1
sell 2:1
senior 8:6
11:21 12:7,13
12:15,17,20
13:4 14:6
18:15 24:19,24
25:7
series 17:1
services 12:17
session 7:4
set 8:11 9:10
settle 11:17
15:14 26:2
settlement 19:9
23:1
settles 26:1
several 9:17
short 21:15
show 22:25
showed 8:13
8:20 12:6
shown 12:19
22:24
shows 16:9
shulman 4:3
sign 17:15
signage 9:23
signature 27:6
signed 16:14

significant
22:20
silence 7:2
similar 10:23
simply 14:4
25:1
simpson 1:22
7:4
sit 23:7,13
site 10:24 16:7
16:9,14,16,19
16:22,23
situation 15:12
six 16:9,10
19:8
sixth 4:5
smokescreen
14:10
social 9:22
sold 9:9 10:22
19:23
solutions 27:20
sonya 3:25
27:3,8
soon 26:15
sorry 23:21
sound 15:5,7,8
15:18 22:17
speak 23:16
spent 16:1
stabilization
22:9
stacy 7:18
stagnate 22:7
stakeholder
22:20

stand 16:13
26:9
started 9:25
stated 10:10,25
states 1:1,11
4:17 7:3 18:23
statute 17:4,7
21:11
stay 25:25 26:5
26:5,12
steven 7:14 8:5
story 12:15
strategic 19:20
street 4:12 5:3
structures 22:8
subject 19:24
submits 9:7
13:3
submitted
11:22 12:4,9
14:3,7,12
25:14
successful 9:6
sudden 24:25
suite 4:12 5:3
27:22
support 12:17
15:9 22:1
sure 22:1,22
24:20
surprise 24:25
swallow 4:15
6:4 7:17,18
14:23,25 23:15
23:24 24:2,17
25:22,23 26:19
26:21

sykesville 2:9
2:12,15 3:9
4:11 7:18 8:20
11:14,16 20:18
22:16,19
sykesville's
9:11
synergetic
19:21

**t**

t 6:12 27:1,1
take 12:23
14:11 22:4
23:6,8
taken 9:16
24:11
talking 17:5
team 14:24
term 17:2,2
terms 24:16
testified 8:7,22
8:24 9:15,21
9:25 10:5,12
10:16,21 11:2
11:9 12:5,20
17:23 18:8,10
18:21
testimony 10:2
13:21 15:24
16:24 17:12,25
18:13 20:19
21:23
text 18:16
thank 7:24
14:21,22 15:2
23:5,22,25
25:20,21 26:14

26:18,19,20,21
26:22
thing 20:3
things 23:7
think 11:20
13:18 17:13
19:15 21:3
24:7,15 26:4
26:17
thinks 17:14
third 24:13
thought 16:21
18:19 19:20
24:19
three 9:4 16:9
16:10,20 19:8
24:5
time 14:11
15:15 16:1
20:5 21:24
22:5 23:1,8
timeframe
26:15
timelines 11:6
times 9:4 24:5
timing 11:15
title 20:24
titles 18:18
today 21:6
25:17
today's 26:2
together 21:17
told 15:7 26:9
took 16:13
tools 22:3
total 9:5

touch 23:10
26:15
town 2:8,12,15
3:8 4:11 7:18
7:19 9:11
11:17,23 12:11
13:20,21,22
14:1,4,4 19:12
19:18 20:4,18
20:19 21:12
22:13,15,19,24
25:8
town's 8:11
9:14 11:11
12:13 14:9,20
15:17 25:9
transcribed
3:25
transcript 27:4
tried 21:1
24:17
true 27:4
trust 8:21
trustee 4:18
try 14:2
turning 18:9
two 11:18 21:1
26:2
types 12:16

**u**

u.s. 1:23 4:18
uncontradicted
8:10
under 8:3
10:24 13:11
17:6,24 18:12
23:7

**unimproved**
  8:15
**united**  1:1,11
  4:17 7:3
**units**  16:10,12
  17:1,22,23
  19:7
**unrelated**
  10:10
**unsecured**  8:23
  9:3
**unsupported**
  18:14
**unusual**  24:7
**urge**  26:10
**urgency**  26:4
**urges**  22:16
**use**  9:21 10:15
  10:20 11:8,21
  12:21 13:14,17
  14:3,6 17:6,7,8
  18:10,19,19,25
  19:1,3 21:16
**uses**  12:25 13:1
  13:23 16:17
  19:22 21:17,18

**v**

**vague**  18:13
**value**  15:15
  23:2
**various**  12:16
  12:25 18:18,24
  19:22
**vast**  10:25
**venture**  10:7
**veritext**  27:20

**vice**  8:6
**video**  7:5
**view**  25:8
**vis**  21:19,19
**vision**  19:21

**w**

**wait**  23:24
**waiting**  19:13
**waive**  26:11
**waived**  26:6
**waiver**  25:25
**waiving**  26:4
**want**  19:5 23:8
  23:23 24:1
**wanted**  26:7
**warfield**  1:7
  2:2,3,4,5,6,17
  2:20,22,22,23
  2:24 3:1,3,3,4
  3:5 4:4 7:6,7
  7:25 10:22,24
  16:17 18:1,17
  18:20 19:23
  21:25
**way**  19:6,21
**we've**  24:7,15
**website**  18:20
**went**  20:23
  24:2
**withhold**  12:12
**witness**  2:11,14
  2:20 3:1 6:7
**written**  23:11

**x**

**x**  1:4,10 6:1,12

**y**

**year**  20:24
**years**  9:17
  10:17 11:18
  21:1 24:11
  26:2

**z**

**zone**  21:18
**zoning**  12:1,1
  12:21 13:3,16
  13:16,24 17:4
  17:7,24 18:12
  18:16 19:6,17
  19:24 20:1
  21:2,11 22:21
  25:8,11

**à**

**à**  21:19