**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case Nos. 24-12500; 24-12506; 24-12504** |
| **WARFIELD HISTORIC** | ) | **24-12508; 24-12511** |
| **PROPERTIES, LLC,** *et al.*, ) | ) | |
| | ) | **(Jointly Administered Under** |
| **Debtors.** | ) | **Case No. 24-12500)** |
| | ) | **Chapter 11** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEBTORS' JOINT AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

**Dated:     November14, 2024**

**Michael J. Lichtenstein (Bar No. 05604)**
**Ben Smith (Bar No. 17680)**
**Shulman Rogers, P.A.**
**12505 Park Potomac Avenue, Sixth Floor**
**Potomac, Maryland 20854**
**TEL:  (301) 230-5231**
**FAX:  (301) 230-2891**
**E-mail: mjl@shulmanrogers.com**
**bsmith@shulmanrogers.com**

*Counsel for the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| IN RE:                   ) | |
|                        ) | **Case Nos. 24-12500; 24-12506; 24-12504** |
| **WARFIELD HISTORIC**     ) | **24-12508; 24-12511** |
| **PROPERTIES, LLC,** *et al.*, ) | |
|                        ) | **(Jointly Administered Under** |
|      **Debtors.**        ) | **Case No. 24-12500)** |
|                        ) | **Chapter 11** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEBTORS' JOINT AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

Warfield Historic Properties, LLC, Warfield Historic Quad, LLC, Warfield Center, LLC, Warfield Properties, LLC and Warfield Restoration, LLC, Debtors and Debtors-In-Possession in this case (collectively, the "Debtors"), hereby file this joint Amended Chapter 11 Plan ("Plan") pursuant to section 1121(a) of the Bankruptcy Code. Although proposed jointly for administrative and distribution purposes, this Plan constitutes a separate plan for each Debtor and each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy

**Article 1**

**Defined Terms**

For purposes of this Plan, the following terms have the meanings set forth below:

**1.1** "**Administrative Bar Date**" means sixty (60) calendar days after the Confirmation Date and is the day when all requests for allowance of Administrative Claims incurred through the Confirmation Date must be filed with the Court or be waived and forever barred. Notice of confirmation of this Plan shall be deemed sufficient and adequate notice of the Administrative Bar Date.

**1.2** "**Administrative Claim**" means an Allowed Claim for costs and expenses of administering and preserving the Estate pursuant to section 503(b) of the Bankruptcy Code, including fees of Professionals approved by the Court and any and all fees payable to the U.S. Trustee by the Debtor under 28 U.S.C. § 1930(a)(6).

**1.3** "**Allowed Claim**" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors:

   a.  for which a Proof of Claim was filed with the Court on or before July 29, 2024, or for Governmental Units on or before September 23, 2024, the applicable period of limitations fixed by the Court (*see* Doc. 7);

   b.  listed in Schedules D, E or F filed by the Debtors with the Court, including any amendments thereto, and that is *not* listed as disputed, contingent, or unliquidated; or

   c.  for which an application has been filed pursuant to sections 329 and 330 of the Bankruptcy Code; and, as to any such claim, either no objection to the allowance thereof has been filed or, if an objection to the allowance thereof has been filed, the Court has overruled such objection or fixed the amount of such claim.

**1.4** "**Bankruptcy Cases**" means the above-captioned bankruptcy cases filed by the Debtors.

**1.5** "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101–1532, together with all amendments and modifications thereto that were subsequently made applicable to bankruptcy cases, and such other sections of the United States Code as are applicable to bankruptcy cases.

**1.6** "**Bankruptcy Judge**" means the bankruptcy judge presiding over the Bankruptcy Case.

**1.7** "**Bankruptcy Rules**" means (a) the Federal Rules of Bankruptcy Procedure, and (b) the Local Rules of the U.S. Bankruptcy Court for the District of Maryland, both as now in effect or as hereafter amended.

**1.8** "**Claim**" means a claim against the Debtors as defined in section 101(5) of the Bankruptcy Code, including any claims arising from the Debtors' rejection of unexpired leases and executory contracts.

**1.9** "**Class**" means a category of Holders of Claims pursuant to section 1122(a) of the Bankruptcy Code.

**1.10** "**Confirmation Date**" means the date on which the Court enters the Confirmation Order.

**1.11** "**Confirmation Hearing**" means the hearing held by the Court to consider confirmation of this Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as may be adjourned or continued from time to time.

**1.12** "**Confirmation Order**" means the order entered by the Court confirming this Plan.

**1.13** "**Court**" means the U.S. Bankruptcy Court for the District of Maryland.

**1.14** "**Debtors**" means Warfield Historic Properties, LLC, Warfield Historic Quad, LLC, Warfield Center, LLC, Warfield Properties, LLC and Warfield Restoration, LLC, (collectively, the "Debtors").

**1.15** "**Debtors' Counsel**" means Shulman Rogers, P.A.

**1.16** "**Disputed Claim**" means (a) a Claim as to which an objection has been filed in accordance with Rule 3007 of the Bankruptcy Rules and which has not been resolved by the Court; and (b) a Claim listed on the Schedules as disputed, contingent or unliquidated and as to which no Proof of Claim has been filed.

4

**1.17** "**Distribution Date**" means such date(s) as the Debtors shall establish for making Distributions to the Holders of Allowed Claims in accordance with this Plan.

**1.18** "**Distributions**" means the property required by this Plan to be distributed to the Holders of Allowed Claims.

**1.19** "**Effective Date**" means the date upon which the Confirmation Order becomes final and non-appealable.

**1.20** "**Estate**" means the bankruptcy estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code and includes the Property.

**1.21** "**Executory Contract**" means any contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.22** "**General Unsecured Claim**" means any Allowed Claim that is not an Administrative Claim or Priority Claim.

**1.23** "**Governmental Unit**" has the meaning of such term under section 101(27) of the Bankruptcy Code.

**1.24** "**Holder**" means the legal or beneficial holder of an Allowed Claim (and, when used in conjunction with a Class or type of Claim, means a Holder of a Claim in such Class or of such type).

**1.25** "**Petition Date**" means March 26, 2024, the date on which the Debtors filed the petitions for relief under chapter 11 of the Bankruptcy Code.

**1.26** "**Post-Confirmation Professional Claims**" means a claim for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services of Professionals performed after the Effective Date.

**1.27** "**Priority Claims**" means any and all Priority Tax Claims and Priority Non-Tax Claims, including employee priority claims.

**1.28** "**Priority Non-Tax Claim**" means an Allowed Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim.

**1.29** "**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**1.30** "**Professional**" means an attorney, accountant, engineer, architect or other professional retained or to be compensated pursuant to an order of the Court entered under sections 327, 328, 330, 503(b) or 1103 of the Bankruptcy Code.

**1.31** "**Proof of Claim**" means a proof of claim filed with the Court pursuant to section 501 of the Bankruptcy Code, Part III of the Bankruptcy Rules or otherwise.

**1.32** "**Reorganized Debtors**" means the Debtors herein.

**1.33** "**Schedules**" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, and any amendments thereto.

**1.34** "**Unexpired Lease**" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.35** "**U.S. Trustee**" means the Office of the United States Trustee for Region 4.

### Article 2
### Classification of Claims

In accordance with section 1122(a) of the Bankruptcy Code, a Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim falls within the description

of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving

Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that

Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims,

Priority Tax Claims and certain other claims have not been classified, and the treatment of such

unclassified Claims is set forth below in Article 3 of this Plan.  For purposes of this Plan, Claims

are unclassified or classified as follows in accordance with sections 1122(a) and 1123(a)(1) of the

Bankruptcy Code:

    **2.1**    **Unclassified Claims**

        a.    Administrative Claims

        b.    Priority Tax Claims

    **2.2**    **Classified Claims**

        a.    **Class 1.**  Class 1 consists of all Priority Claims, if any.

        b.    **Class 2**.  Class 2 consists of The Town of Sykesville's claim.

        c.    **Class 3**.  Class 3 consists of all General Unsecured Claims.

        d.    **Class 4.**  Class 4 consists of the holder of equity security interests in the

Debtors.

### Article 3
### Treatment of Unclassified Claims

**3.1**    **Administrative Claims**.  Each Administrative Claim will be paid in full on the

Effective Date.  Any Administrative Claims of Professionals approved by the Court after the

Effective Date shall be paid upon entry of an Order approving such Professional's Administrative

Claim.

7

**3.2**     **Priority Tax Claims**.  Each Priority Tax Claim, if any, will be paid in full on the Distribution Date.

**Article 4**
**Treatment of Classified Claims**

**4.1**     **Class 1 - Priority Claims**.  Each Priority Claim, if any, will be paid in full from the Debtors' cash on the Effective Date.  Pursuant to sections 1124 and 1126(f) of the Bankruptcy Code, Class 1 is an unimpaired Class and conclusively presumed to have accepted this Plan.

**4.2**     **Class 2 – The Town of Sykesville's Claim**.  The Class 2 Town of Sykesville Claim will be paid in full with interest at the rate of 6% per annum[1] no later than the first to occur of: closing on the sale of Parcel B; closing on the sale of Parcel A or any other real estate the Debtors own; or a refinancing of the debt owed to The Town of Sykesville under the Deed of Trust Note dated June 26, 2018 (not including working capital funds that may be raised or borrowed). The holder of the Town of Sykesville Claim will retain its pre-petition liens on account of its secured loan until the claim has been paid.  The holder of the Class 2 Claim is Impaired.  Until this claim is paid, the Debtors shall make monthly interest payments, each in the amount of $5,000.00.

**4.3**     **Class 3 - General Unsecured Claims**.  Each holder of a General Unsecured Claim will be paid in full with interest at the rate of 6% per annum no later than the first to occur of: closing on the sale of Parcel B; or closing on the sale of Parcel A or the sale of other real estate the Debtors own.  Holders of the Class 3 Claims are impaired.

**4.4**     **Class 4 – Membership Interests**. In exchange for contributing up to $1,400,000.00 as required, to fund the Plan payments and the Debtors' operating expenses, as they accrue, the

---

[1] As of November 6, 2024, the Secured Overnight Financing Rate ("SOFR") was 4.82%.

current member will own 100% of the membership interests in the Reorganized Debtors. The holder of interests in this Class 4 is impaired.

## Article 5
## Means for Execution of the Plan

5.1     **Generally.**      After confirmation, the Reorganized Debtors will have the same equity security holder as pre-petition.   The officers and directors will remain in their same capacities in the Reorganized Debtors.   Currently, Roger Conley is the President and Steven McCleaf is the Senior Vice President and Chief Development Officer of the Debtors.   The Plan will be funded as set forth above and by property sales and/or a refinancing.   As set forth in Roger Conley's declaration attached to the Amended Disclosure Statement, Warfield Investments, Inc., the Debtors' equity security holder, has sufficient funds to fund the Plan as contemplated herein.. Pre-petition and post-petition, Warfield Investments, Inc., the Debtors' equity security holder, has assisted in  funding the Debtors' monthly operating expenses (as an equity investment).  That entity will continue to pay monthly operating expenses as required, in addition to making the Plan payments.

5.2     **Post-Confirmation Retention and Compensation of Professionals**.

Upon confirmation of this Plan, the Debtors will have the right to (i) retain Professionals (subject to the Court's approval) to implement the terms of the Plan, including to assist with the reconciliation of Claims and the making of Distributions, and (ii) pay the Post-Confirmation Professional Claims of such retained Professionals without further Order of this Court.

5.3     **Distributions to Creditors**.  Distributions to Holders of Allowed Claims will be sent: (a) to the address set forth on the Proof of Claim filed by each Holder; (b) to the address set forth in any subsequent notice of change of address filed with the Court; (c) to the address reflected in the Schedules if no Proof of Claim or notice of change of address is filed; or (d) pursuant to the

written instructions of the Holder of the Allowed Claim sent to and received by the Debtors no later than five (5) business days prior to the next Distribution Date.

**5.4** **Undeliverable Distributions**.  If a monetary Distribution to any Holder is returned as undeliverable, the Debtors shall use reasonable efforts to determine such Holder's then current address.  If the Debtors cannot determine, or is not notified of, a Holder's then current address within three (3) months after the Distribution Date, the Distribution reserved for such Holder shall be deemed an unclaimed Distribution and revert to and be owned by the Reorganized Debtors.

**5.5** **Duties and Retained Rights and Powers**.  The Debtors will continue to exist post-confirmation. Upon confirmation of this Plan, the Debtors will retain all of their rights and powers under the Bankruptcy Code, including, but not limited to, the right to prosecute and resolve all avoidance and other causes of actions and all other rights and powers under sections 505, 506, 541, 542, 543, 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code.  Upon confirmation of the Plan, the Debtors will be responsible for the implementation of this Plan and all post-confirmation responsibilities, including Claims reconciliation, coordinating and making Distributions, filing quarterly and other reports with the Court and the U.S. Trustee, paying the U.S. Trustee's fees and closing these Bankruptcy Cases.

**5.6** **U.S. Trustee's Post-Confirmation Fees**.  All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date.  All fees payable pursuant to section 1930 of Title 28 of the United States Code after the Effective Date shall be paid on a quarterly basis until the Chapter 11 case is closed, converted, or dismissed.  The reorganized Debtors are liable for the payment of all quarterly fees due pursuant to section 1930 of Title 28 after the Effective Date.

The reorganized Debtors shall file with the Court and provide the United States Trustee with post-confirmation quarterly reports that shall include all of their disbursements for that quarter.

### Article 6
### Executory Contracts and Unexpired Leases

**6.1** **Plan Constitutes Motion to Assume.** Except for any insurance policies under which the insurer has a continuing obligation to pay the Debtors or a third party on behalf of the Debtors or as may be otherwise set forth in this Plan, all Executory Contracts and Unexpired Leases not rejected by the Debtors previously shall be deemed assumed on the Closing Date. Entry of the Confirmation Order shall constitute approval of such rejections under sections 365 and 1123 of the Bankruptcy Code.

**6.2** **Claims Arising From Rejection.** Any Claim arising from the rejection of an Unexpired Lease or Executory Contract shall be filed with the Court no later than twenty (20) calendar days after entry of the Confirmation Order. If not timely filed, then such Claim will be waived and forever barred. Any Allowed Claim arising from the rejection of an Executory Contract or an Unexpired Lease will be a Class 3 Claim.

### Article 7
### Administrative Bar Date

**7.1** **Administrative Bar Date.** All requests for payment of unpaid Administrative Claims, including applications of Professionals for compensation and expense reimbursement for services rendered or expenses incurred through the Confirmation Date, shall be filed with the Court no later than sixty (60) calendar days after the Confirmation Date. If not timely filed, then such Administrative Claims will be waived and forever barred. Any payment made or to be made by the Debtors for services or for costs and expenses incurred during these Bankruptcy Cases through

the Confirmation Date, or in connection with this Plan and incident to these Bankruptcy Cases, is subject to the Court's approval as reasonable.

**7.2** **Disallowance of Improperly Filed Administrative Claims**.    Requests for payments of Administrative Claims included within a proof of claim are of no force and effect, and are disallowed in their entirety as of the Effective Date, and shall be satisfied only to the extent such Administrative Claim is subsequently filed in a timely fashion as provided in section 7.1 and subsequently becomes an Allowed Claim.

**Article 8**
**Disputed Claims**

**8.1** **No Distribution on Claim Unless an Allowed Claim.** Notwithstanding any other provision of this Plan, no cash or property will be distributed under this Plan on account of the disputed portion of any Claim or any Disputed Claim, unless and until the disputed portion of such claim becomes an Allowed Claim.

**8.2** **Objections to Claims.** Objections to Claims may be filed no later than six months after the Effective Date.  The Debtors retain the discretion to litigate any such objections to a final determination by the Court or to compromise, settle, or otherwise resolve any such objection subject to the Court's approval; *provided, however*, that the Debtors may settle any Claims without prior court approval if the allowed amount of the Claim does not exceed $25,000.00 and if the U.S. Trustee and the 20 largest unsecured creditors fail to object after ten (10) business days' notice of such settlement.

**8.3** **Allowance of Disputed Claims.** If any portion of a Disputed Claim is allowed, then distributions to the Holder of such Claim will be made, within two weeks, in the amount that such Holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Distribution Date without interest or present value adjustment.

**Article 9**
**Effect of Confirmation**

**9.1      Binding Effect**.  On and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim and the Debtors.

**9.2      Limitation of Liability**.  Only to the extent permitted by Section 1125(e) of the Bankruptcy Code, the Debtors shall not have or incur any liability to any person for any act taken or omission made in good faith in connection with or related to formulating, soliciting, implementing, confirming or consummating this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan through the Effective Date other than for any actions arising from fraud, gross negligence, willful misconduct, and government claims.

**9.3      Injunction**.  The confirmation of this Plan will satisfy all Claims or causes of action arising out of any Claim addressed by the terms of this Plan and will operate as an injunction against all persons of the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, the Debtors and the Estates, except as provided in this Plan.

**9.4      General Releases by Holders of Claims**.  Without limiting any other applicable provisions of, or releases contained in, this Plan or the Bankruptcy Code, as of the Effective Date, in consideration for, among other things, the Debtors' obligations under this Plan, cash and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with this Plan, each Holder of a Claim (a) voting to accept the Plan or (b) abstaining from voting on the Plan and electing not to opt out of the release contained in this paragraph, will be deemed to unconditionally agree to the release provisions contained in this Plan; other than as expressly provided herein, each such Holder shall be deemed to forever release, waive and

discharge all liabilities in any way relating to the Debtors, the Bankruptcy Case or this Plan that such person has, had or may have against the Debtors; *provided*, *however*, that the releases described in this paragraph shall not include any act, omission or occurrence that was the result of fraud, gross negligence or willful misconduct and criminal activity. Notwithstanding the above, all claims are discharged in accordance with the Bankruptcy Code.

**9.5**     **Exculpation and Limitation of Liability**.   The Debtors shall not have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, for any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of the administration of the Bankruptcy Case, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, provided, however, that the foregoing shall not operate as a waiver of, or release from, any of the obligations arising under the Plan or the final executed versions of the related documents and agreements.

**Article 10**
**Modification of Plan**

**10.1**     **Pre-Confirmation Modification.**     The Plan sponsors reserve the right, in accordance with the Bankruptcy Code, to amend or modify this Plan or the treatment of any Claim prior to the Confirmation Date.

**10.2**     **Post-Confirmation Modification.**   After the Confirmation Date, the Plan sponsors may amend or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in this Plan, in such a manner as may be necessary to carry out the purpose and intent of this Plan.

## Article 11
## Retention of Jurisdiction

**11.1    Pre-Confirmation.**  Prior to confirmation of this Plan, the Court shall retain its existing jurisdiction, including jurisdiction over the Debtors and the Debtors' assets.

**11.2    Post-Confirmation.**    After confirmation of this Plan, the Court shall retain jurisdiction necessary to ensure that the terms of this Plan are carried out.  The Court's jurisdiction shall be over any and all disputes and litigation pending on the Confirmation Date, any controversies that may arise thereafter, and any controversies that may affect the consummation of this Plan, including but not limited to:

a.        The classification of Claims, the re-examination of Claims which have been allowed for purposes of voting, and any Claim objections that may be filed.

b.        The determination of all causes of action, controversies, disputes and conflicts involving or relating to the Debtors or their assets, arising prior to or after the Confirmation Date, whether or not subject to an action pending as of the Confirmation Date, between the Debtors and any other party.

c.        The modification of this Plan after confirmation to correct any defect, to cure any omission, or to reconcile any inconsistency in this Plan or in the Confirmation Order, as may be necessary or otherwise appropriate to carry out or clarify the intended purposes of this Plan or the Confirmation Order.

d.        Applications for compensation of services rendered to the Debtors and the Estates by Professionals pursuant to section 330(a) of the Bankruptcy Code.

e.        The enforcement and interpretation of the terms and conditions of this Plan, including any agreement regarding the payment or satisfaction of an Allowed Claim.

f.      The existence, extent or priority of any liens, encumbrances, or interests in property of the Debtors or the Estates.

g.      All matters concerning local, state and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

h.      Issue orders or take any action as may be necessary to enjoin interference with the implementation or the consummation of this Plan.

i.      Entry of an order concluding and terminating the Bankruptcy Case.

## Article 12
## General Provisions

**12.1    General Rules of Interpretation.**    For purposes of this Plan, the following rules of interpretation apply:

a.      <u>Construction of Terms</u>.  Except as otherwise provided herein, this Plan shall be construed in conformance with section 102 of the Bankruptcy Code.  Whenever it is appropriate because of the form or the context, each term whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender, and each term stated in either the singular or the plural includes the singular and the plural. Any capitalized term used in this Plan that is not defined in this Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the context requires.

b.      <u>Referenced Documents</u>.   Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.  Any reference in this Plan to an existing document or exhibit filed

or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented.

> c.   Captions and Headings.  Captions and headings in articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan.  Unless otherwise specified, all references in this Plan to sections, articles or exhibits are references to sections, articles and exhibits of or to this Plan.

**12.2   Governing Law.**  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law applies, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Maryland, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.3   Reservation of Rights Regarding Claims**.   Except as otherwise explicitly provided in the Plan, nothing herein shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**12.4   Successors and Assigns**.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**12.5   Closing Bankruptcy Case.**  When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed, and all distributions required under this Plan have been completed, the Debtors will file a notice advising the Court and all parties in interest of the substantial consummation of this Plan and will file a Final Report.

**12.6   Waiver of Applicable Stays.**  Any and all automatic stays, including those in Rules 3020(e) and 6004(h) of the Bankruptcy Rules, are waived and the Confirmation Order will provide

as such.  In the absence of an affirmative order entered by the Court granting a motion to stay the Confirmation Order, the Debtor will be entitled to immediately implement this Plan.

    **12.7**    Within seven (7) days after the occurrence of the Effective Date, the Debtors shall file their Notices of Occurrence of Effective Date with the Court and serve that Notice on all creditors.


           **WARFIELD RENEWAL, LLC**

By:    /s/ Roger Conley
           Name:  Roger Conley
           Title:  Its President

Date: November 14, 2024

           **WARFIELD HISTORIC PROPERTIES, LLC**
           **By:**
           **WARFIELD RENEWAL, LLC:**

           */s/ Roger Conley*
           By:  Roger Conley
           Its President


           **WARFIELD HISTORIC QUAD, LLC**
           **By:**
           **WARFIELD RENEWAL, LLC:**

           */s/ Roger Conley*
           By:  Roger Conley
           Its President


           **WARFIELD CENTER, LLC**
           **By:**

**WARFIELD RENEWAL, LLC:**

/s/ Roger Conley
By:  Roger Conley
Its President


**WARFIELD PROPERTIES, LLC**
**By:**
**WARFIELD RENEWAL, LLC:**

/s/ Roger Conley
By:  Roger Conley
Its President


**WARFIELD RESTORATION, LLC**
**By:**
**WARFIELD RENEWAL, LLC:**

/s/ Roger Conley
By:  Roger Conley
Its President


Respectfully submitted,


**SHULMAN ROGERS, P.A.**

By:      /s/ Michael J. Lichtenstein
         Michael J. Lichtenstein (Bar No. 05604)
         Benjamin P. Smith (Bar No. 17680)
         12505 Park Potomac Avenue, 6th Floor
         Potomac, MD  20854
         TEL:   301-230-5256 (Lichtenstein)
                301-230-5241 (Smith)
         FAX:   301-230-2891
         Email: mjl@shulmanrogers.com
                bsmith@shulmanrogers.com

*Counsel for Debtors*