IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| **In re:** | * | |
| | * | **Case Nos. 24-12500** |
| | | **(Chapter 11)** |
| **WARFIELD HISTORIC PROPERTIES, LLC,** *et al.*, | * | |
| | * | **Jointly Administered Under** |
| Debtors. | | **Case No. 24-12500-LSS** |
| | * | **(Chapter 11)** |

*   *   *   *   *   *   *   *   *   *   *   *   *   *

| | |
|---|---|
| **THE TOWN OF SYKESVILLE** | * |
| **7547 Main Street** | |
| **Sykesville, Maryland 21784,** | * |
| | |
| Movant, | * |
| | |
| v. | * |
| | |
| **WARFIELD HISTORICS PROPERTIES, LLC** | * |
| **One Research Court, Suite 450** | * |
| **Rockville, Maryland 20850,** | |
| | * |
| and | |
| | * |
| **WARFIELD HISTORIC QUAD, LLC** | |
| **One Research Court, Suite 450** | * |
| **Rockville, Maryland 20850,** | |
| | * |
| Respondents. | |

*   *   *   *   *   *   *   *   *   *   *   *   *   *

**MOTION OF THE TOWN OF SYKESVILLE FOR RELIEF FROM THE
AUTOMATIC STAY TO CONINUE LITIGATION PENDING IN THE
<u>CIRCUIT COURT FOR CARROLL COUNTY, MARYLAND</u>**

The Town of Sykesville (the "Town"), by its undersigned counsel, pursuant to 11 U.S.C.

§ 362(d)(1), Fed. R. Bankr. P. 4001(a) and Local Bankruptcy Rule 4001-1, hereby moves for relief

from the automatic stay of 11 U.S.C. § 362 to enable the Town to continue prosecuting a civil action styled *Town of Sykesville v. Warfield Historic Properties, LLC, et al.*, Circuit Court for Carroll County, Case No. C-06-CV-23-000249 (the "Lawsuit). The Lawsuit was pending in the Circuit Court for Carroll County, Maryland (the "Circuit Court") against, *inter alia*, debtors Warfield Historic Properties, LLC ("WHP") and Warfield Historic Quad, LLC ("WHQ" and, collectively with WHP, the "Respondents")[1] when these jointly administered cases were filed. In support of this motion, the Town states:

**I.     BACKGROUND**

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2. The Town is a Maryland municipal corporation located in Carroll County, Maryland and is a secured creditor herein.

3. On March 26, 2024 (the "Petition Date"), WHQ, WHP, Warfield Center, LLC, Warfield Properties, LLC and Warfield Restorations, LLC (collectively, the "Debtors") each filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 cases are jointly administered under Case No. 24-12500-LSS.

**The Parcel D Properties**

4. On or about June 26, 2018, a predecessor in interest to Respondents closed on the purchase from the Town and the Warfield Development Corporation of a tract of land containing various parcels that, under the Purchase and Sale Agreement and related documents, the

---

[1] Non-debtor Sudow Kohlhagen LLP (the "SK Firm") also was a named defendant in the Lawsuit. The SK Firm was appointed as the original escrow agent as a result of the transaction at issue in the state court action, and it was named in the suit in that capacity so that it would be bound by any judgment. By an agreement between and among the SK Firm, the Town and the Respondents, the Town anticipates that the Lawsuit will be dismissed as to the SK Firm and a replacement escrow agent will be appointed by the Town and the Respondents.

purchaser agreed to develop as a Planned Employment Zone ("PEC") pursuant to an approved Preliminary Concept Plan and subject to certain PEC zoning requirements described in the Code of the Town of Sykesville, Chapter 180 (Zoning), §§ 180-134, *et seq*. Such real property included a parcel, designated as Parcel D, upon which there were and remain 14 historic structures.

5. As contemplated under the Sale Agreement, Parcel D was subjected to a land condominium regime with each historic building located on a parcel individually designated as a condominium unit. Following the sale, the Respondents each held title to certain Parcel D units as follows:

| Parcel D Units | OWNER |
|---|---|
| Buildings/Units: D/5; E/6, Root Cellar/7; Engine House/8; F/12, Dining Hall/13; W/14 | Warfield Historic Properties, LLC |
| Buildings/Units: A/1; B/2; C/3; L/4 | Warfield Historic Quad, LLC |

(collectively, the "Parcel D Properties").

### The Town's Claims Against the Debtors

6. In connection with the sale, the Town made a loan to the Debtors in the original principal amount of One Million Dollars ($1,000.000.00) (the "Loan"). The Loan is evidenced by a Deed of Trust Note made by the Debtors payable to the order of the Town in the aforesaid principal amount (the "Note"). As security for the repayment of the Loan, the Debtors executed a Purchase Money Deed of Trust, Assignment and Security Agreement dated June 26, 2018 (the "DOT") for the benefit of The Town.[2] The DOT was properly recorded among the Land Records of Carroll County, Maryland, at Book 9054, page 118. Pursuant to the DOT, the

---

[2] The Note and DOT are attached as **Exhibits "A" and "B"** to several Proofs of Claim filed by the Town in the above-captioned cases, including the claims denoted on the Claims Register for Case No. 24-12500-LSS as Claims 7-1 and 8-1 against WHP and WHQ, respectively.

3

Debtors granted the Town a deed of trust lien in and security interest on the PEC properties, including the Parcel D Properties.

7. As contemplated by the Purchase Agreement, because of the presence of the historic properties, Parcel D was subject to a Parcel D Preservation Agreement, a Parcel D Escrow Agreement, and a Reversion Agreement (collectively, the "Agreements").[3] The Agreements provided, among other things, that a portion of the proceeds from the sale would be deposited into three escrow accounts and used thereafter by the Respondents to preserve and rehabilitate the historic structures; that certain escrow funds would be spent for qualifying activities related to the preservation and rehabilitation of the historic structures by the third, seventh and twelfth anniversaries of the Agreements, and that, if the Debtors failed to expend the funds by the specified deadlines, the Town could exercise its rights to have any or all of the Parcel D Properties revert to it.

8. Well before the Petition Date, the Respondents materially breached their respective obligations under the Agreements by, *inter alia*, failing to stabilize, preserve and rehabilitate the historic structures, or to use the escrowed funds for those purposes, in the manner and pursuant to the completion schedule prescribed in the Agreements. Accordingly, by letters dated May 10, 2023, addressed to WHQ and WHP, respectively, the Town notified the Respondents of such defaults and demanded pursuant to the Reversion Agreement that the

---

[3] Copies of the Agreements are attached as **Exhibits "A", "B" and "C"** to several Proofs of Claim filed by the Town in the above-captioned cases, including the claims denoted on the Claims Register for Case No. 24-12500-LSS as Claims 12-1 and 13-1 against WHP and WHQ, respectively. The Parcel D Preservation Agreement and Reversion Agreement also are recorded among the Land Records of Carroll County, Maryland at Book 9054, Page 90 and Book 9054, Page 107, respectively.

4

Respondents cause the Parcel D Properties to revert to the Town.  By letters dated November 30, 2023, addressed to WHQ and WHP, the Town amended the May 10, 2023 demands.[4]

9. On May 25, 2023, the Town commenced the Lawsuit to enforce its rights under the Reversion Agreement.  Pursuant to the Town's second amended complaint in the Lawsuit, the Town demanded specific performance of the Respondents' obligations under the Reversion Agreement to fulfill their duty to convey the Parcel D Properties to the Town, as well as the Town's costs, fees and expenses for pursuing the Lawsuit, and remittance to the Town of all funds remaining in the escrow funds maintained pursuant to the Escrow Agreement.

10. The Respondents sought to excuse their performance under the Sale Agreement and resulting Agreements by pleading the affirmative defense of *force majeure*.  In discovery, in support of their argument, the Respondents relied on the COVID-19 pandemic of March 2020.  They did not contend that they were forced to delay or shut down development of the project by any government order, but rather that the pandemic changed the market demand for development and the associated lending and funding environment.

11. Further, on August 18, 2023, the Respondents filed a Counterclaim against the Town alleging, *inter alia*, that the Town breached an implied duty of good faith and fair dealing.  The Respondents alleged that because of market conditions, the Town had a duty to cooperate with the Debtors and to exercise the Town's discretionary authority to approve rezoning and text amendment proposals that would permit development of substantially more residential units within the project than was agreed upon in: (i) the Sale Agreement, including its twelve (12) amendments in the four (4) years between contract signing and closing; (ii) the PEC preliminary

---

[4] Copies of the aforementioned correspondence dated May 10, 2023, and November 30, 2023, are attached as **Exhibits "D", "E", "F" and "G"** to several Proofs of Claim filed in the above-captioned cases, including the claims denoted on the Claims Register for Case No. 24-12500-LSS as Claims 12-1 and 13-1 against WHP and WHQ, respectively.

plan adopted pursuant to the Sale Agreement; or (iii) the PEC statutory zoning that Respondents had sought prior to, and the passage of which was a condition of, closing (and was accepted by the Respondents at closing).  In essence, the Respondents allege the Debtors had a right to pursue a completely different development strategy for the project from what the parties negotiated and agreed to and that the Town had some duty to approve whatever development strategy the Debtors wanted, notwithstanding the agreements with the Town.

12. Before the Petition Date, the parties actively pursued litigation of the Lawsuit. The parties engaged in extensive discovery, including written discovery, substantial document production involving thousands of pages, and the conduct of depositions of both fact and expert witnesses.  When the Debtors' cases were filed, the Circuit Court had already held two motions hearings, ruled on various discovery issues, a discovery motion was pending, and the Lawsuit was set for trial in January 2025.  A trial date in May 2024 was postponed on joint motion in order to allow the parties to finish their remaining discovery.

13. In fairness, however, the Town believes additional discovery will be necessary based on the passage of time and changes sought in the project by the Debtors within the bankruptcy proceeding.

## II. DISCUSSION

14. The Town anticipates that the Debtors will dispute both the Town's secured claims and unsecured claims against the Debtors and that the bases of such objections will be the same contentions that the Town allegedly breached implied duties of good faith and fair dealing that have been at issue in the Lawsuit since the Respondents filed the Answer and Counterclaim. Accordingly, resolution of the Debtors' disputes concerning the Town's claims will concern the same facts, circumstances, claims, defenses and counterclaims have been the subject of the

Lawsuit for nearly two years. Accordingly, the Town hereby seeks relief from the automatic stay of 11 U.S.C. § 362(a), for "cause" within the meaning of 11 U.S.C. § 362(d)(1), to continue the Lawsuit in the Circuit Court.

15. The Bankruptcy Code does not define "cause" within the meaning of § 362(d)(1), instead providing only that "cause" may include a lack of adequate protection of a movant's interest in property. Case law within this district has interpreted the language of § 362(d)(1) broadly:

> This court holds that cause for relief from stay is not limited to a lack of adequate protection or a finding of bad faith motive for filing the bankruptcy case. As stated by the Fourth Circuit in *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992), "[b]ecause the [Bankruptcy] Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis." This court has similarly interpreted Section 362(d)(1): "11 U.S.C. § 102(3) construes the term "including" to be not limiting. Thus it is clear that cause, other than a lack of adequate protection, may be the basis for relief from the automatic stay." *In re Internal Revenue Service v. Bacha*, 166 B.R. 611, 612 (Bankr. D. Md. 1993). It follows, that while circumstances which form cause for relief from stay may include a bad faith filing of the case, a finding of bad faith is not a prerequisite to a finding of cause.

*In re Shady Grove Tech Center Associates Ltd. Partnership*, 216 B.R. 386, 388 (Bankr. D. Md. 1998) (supplemented on remand by *In re Shady Grove Tech Center Associates Ltd. Partnership*, 227 B.R. 422 (Bankr. D. Md. 1998)).

16. In determining whether to lift the automatic stay, for cause, to permit the continuation of litigation in another forum that was ongoing when a bankruptcy case was filed, this Court must weigh the potential prejudice to the Debtors' estates against the hardship that will be incurred by the Town if the relief were to be denied. *See Robbins*, 964 F.2d at 345 (citing *In re Peterson*, 116 B.R. 247, 249 (D. Colo. 1990)). The balancing test requires consideration of the following factors:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay

>   will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

Id. (citations omitted).

17. The Lawsuit concerns pure issues of Maryland state contract law regarding contract formation, interpretation, and defenses, as well as zoning, land use and development issues that not only turn entirely on Maryland and local law, but are also of particular interest to Carroll County, Maryland. The defenses and counterclaims invoked by the Respondents also implicate the Covid-19 Executive Orders issued by then Maryland Governor Larry Hogan, as well as the interpretation and application of those orders to contracts involving real property as decided by Maryland's appellate courts including *SVAP II Pasadena Crossroads LLC v. Fitness Int'l LLC*, 260 Md. App. 77 (2023), and *Critzos v. Marquis*, 256 Md. App. 684 (2023). Thus, because the issues in the pending Lawsuit involve only Maryland state law, the expertise of the bankruptcy court is unnecessary. *See In re Lee,* 461 F. App'x 227, 232 (4th Cir. 2012) (affirming order lifting stay and stating, "Notably, real property law is an area in which federal courts are especially deferential to state courts.") (citation omitted).

18. Further, resolution of the Lawsuit will not only further the interest of resolving the issues at stake in the Town's claims and the Debtors' objections thereto, but it also will impact the future relationship between the Debtors and the Town with respect to the continued development of the PEC. Accordingly, the Circuit Court is the ideal forum for determination of the matters at issue in the Lawsuit.

19. Continuation of the Lawsuit in the circuit court also would promote judicial economy. When the Debtors commenced these cases, the parties had been actively engaged in litigation of the Lawsuit. After the Respondents filed the Counterclaim on August 18, 2023, the

8

parties engaged in extensive, time-consuming and costly discovery and were preparing the Lawsuit for trial in January 2025.  Substantial progress toward a resolution of the Lawsuit already had been made as of the Petition Date, and the same claims and defenses of the parties to the Lawsuit necessarily will need to be resolved to determine the extent to which the Town's claims in the Debtors' bankruptcy cases should be allowed.  Commencement of a new action in this Court to litigate the same or substantially overlapping claims and causes of action would be wasteful and time-consuming, and it would require the Town and Debtors to duplicate their prepetition efforts to bring the issues to trial in the Lawsuit.

20. Finally, the Court could insure that the estate is protected if this matter is tried to a conclusion in the Circuit Court by requiring that the enforcement of any judgment in favor of the Town be pursued in this Court.  The Debtors are seeking to reorganize in these jointly administered cases and are in the process of seeking confirmation of a joint plan of reorganization.  If the Court confirms such a plan, any relief obtained by the Town as a result of the Lawsuit could be addressed within the framework of the plan.  If the Debtors fail to obtain confirmation of a plan, enforcement of the Town's claims can be carried out pursuant to the same procedural framework that applies in any liquidating case under the Bankruptcy Code.

21. The Town shall rely solely on the Motion, and no additional memorandum shall be filed.

22. Notice of this Motion has been given pursuant to Fed. R. Bankr. P. 4001(a).

### III. **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Town respectfully requests that the Court (i) enter an Order granting the Town relief from the automatic stay of 11 U.S.C. § 362(a) to permit the Town to continue the Lawsuit in the Circuit Court, with enforcement of any relief

obtained by the Town in such Lawsuit to be reserved to this Court's jurisdiction; and (ii) grant such other and further relief as is just and equitable.

Dated: December 20, 2024                    /s/ Bradley J. Swallow
                                                        Bradley J. Swallow, Bar No. 11250
                                                        Eric S. Schuster, Bar No. 03417
                                                        FUNK & BOLTON, P.A.
                                                        100 Light Street, Suite 1400
                                                        Baltimore, Maryland 21202
                                                        410.659.8320 (telephone)
                                                        410.659.7773 (facsimile)
                                                        bswallow@fblaw.com

                                                        Counsel for The Town of Sykesville

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of December 2024, a copy of the foregoing Motion of the Town of Sykesville for Relief from the Automatic Stay to Continue Litigation Pending in the Circuit Court for Carroll County, Maryland, together with the accompanying Notice of Motion, was served electronically by the Court's CM/ECF system on the following:

    Michael J. Lichtenstein, Esquire mjl@shulmanrogers.com;
    tlockwood@shulmanrogers.com; nlawal@shulmanrogers.com
    Rebekah F. Paradis, Esquire rparadis@shulmanrogers.com
    Lynn A. Kohen, Esquire lynn.a.kohen@usdoj.gov
    US Trustee – Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV
    Robert B. Scarlett, Esquire RScarlett@ScarlettCroll.com,
    krynarzewski@scarlettcroll.com, scarlettrr64434@notify.bestcase.com

and by first-class mail, postage prepaid, upon the 20 largest unsecured creditors listed on the attached Creditor List, and upon:

    Office of the United States Trustee
    6305 Ivy Lane, Suite 600
    Greenbelt, Maryland 20770

    Warfield Historic Properties, LLC
    One Research Court, Suite 450
    Rockville, Maryland 20850

Warfield Historic Quad, LLC
One Research Court, Suite 450
Rockville, Maryland 20850

                                                   /s/ Bradley J. Swallow
                                                   Bradley J. Swallow

52050.043:237292