IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| **In re:** | * | |
| | * | Case Nos. 24-12500; 24-12504; 24-12506; 24-12508; 24-12511 |
| **WARFIELD HISTORIC PROPERTIES, LLC,** *et al.*, | * | (Chapter 11) |
| | * | Jointly Administered Under Case No. 24-12500-LSS |
| Debtor. | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OBJECTION OF THE TOWN OF SYKESVILLE TO DEBTORS' MOTION FOR AN ORDER APPROVING AND AUTHORIZING REJECTION OF CONSOLIDATED EXECUTORY CONTRACT**

The Town of Sykesville (the "Town"), by its undersigned counsel, hereby objects to the Debtors' Motion for an Order Approving and Authorizing Rejection of Consolidated Executory Contract (Docket 162) (the "Motion") filed by debtors Warfield Historic Properties, LLC ("WHP") and Warfield Historic Quad, LLC ("Quad" and, collectively with WHP, the "Debtors"), and states:[1]

**Introduction**

1.  By the Motion, the Debtors attempt for the second time to reject prepetition contracts (as defined below, the "Agreements") with the Town that the Debtors had materially breached well prior to seeking bankruptcy protection. This time, the Debtors primarily focus on alleged obligations of the Town in hypothetical scenarios in which the Debtors had not materially breached. As discussed further below, however, by the time the Debtors commenced their

---

[1] As a preliminary matter, under Local Bankruptcy Rule 6006-1, Debtors "must give notice" of their motion to reject to the non-debtor party to the contract at issue, among other interested parties named therein. *See* Local Bankruptcy Rule 6006-1(a). Moreover, "[T]he notice must state that the Court may rule upon the motion without a hearing if there is no timely written request for a hearing or opposition to the relief requested." *Id*. Debtors failed to provide notice of their motion as required under Local Bankruptcy Rule 6006-1(a).

bankruptcy cases, the Town had long since notified the Debtors: (i) of their numerous material breaches of the Agreements; and (ii) their duty to return the real property and escrowed funds that were the subject of the Agreements. By state law, the Debtors' material breaches of the Agreements constituted a failure by the Debtors to satisfy any "performance conditions" under the Agreements that could have given rise to performance obligations (material or otherwise) by the Town, thereby legally excusing the Town of any such obligations. Accordingly, to the extent the Agreements were executory contracts at the time of the Debtors' material breaches (which the Town disputes), the Debtors' failure to satisfy such performance conditions rendered the Agreements non-executory. In short, the Agreements are no more executory today than they were when the Debtors previously sought to reject them. The Debtors' Motion should be denied.

2. In the Motion, the Debtors fail to address the Town's claims that the Debtors materially breached the Agreements prepetition, even though the consequences of such breach are central to the resolution of the Debtors' jointly administered cases. Currently pending in these cases are the Town's (i) Motion for Relief from the Automatic Stay to Continue Litigation Pending in the Circuit Court for Carroll County, Maryland (Docker 147) (the "Lift-Stay Motion"); and (ii) Motion for Abstention with Respect to State Law Disputes Underlying Debtors' Objection to Claims (Docket 164) (the "Motion to Abstain"). In both Motions, incorporated herein, the Town asks the Court to permit the Carroll County Circuit Court to preside over the Town's prepetition, specific performance Lawsuit commenced as a result of the Debtors' breach of the Agreements. Resolution of the Lawsuit would conclusively resolve whether, under state law, the Town had any remaining material obligations to the Debtors under the Agreements. Accordingly, for the reasons articulated in the Motion to Abstain, the Court should abstain from consideration of the dispute underlying the Motion until the Lawsuit has been litigated to judgment in the Circuit Court.

**Background**

3. On April 17, 2024, the Debtors filed (i) a Motion for an Order Approving and Authorizing Rejection of Parcel D Preservation Agreement (Docket 42); and (ii) a Motion for an Order Approving and Authorizing Rejection of Reversion Agreement (Docket 43) (collectively, the "Prior Rejection Motions").

4. The Town objected to each of the Prior Rejection Motions (Dockets 52, 53). The grounds for the Town's objection are set forth in the Town's Objection to Debtors' Motion for an Order Approving and Authorizing Rejection of Reversion Agreement (Docket 52) (the "Prior Objection"). In brief, the Town opposed rejection on the ground that the Agreements were not executory because (i) "material" obligations did not remain unperformed by both sides as of the date the Debtors filed their bankruptcy petition; and (ii) the Agreements contained covenants that run with the land. Attached to the Prior Objection as **Exhibit 1** is a copy of the Town's Second Amended Complaint in the Lawsuit ("Second Am. Compl."). The Town hereby incorporates the Prior Objection by reference and objects to the Motion for the reasons set forth in detail in the Prior Objection. Further, unless otherwise defined, defined terms used herein shall have the meanings ascribed to them in the Prior Objection.

5. The Debtors seek to differentiate the Motion from the prior Motions by asserting that the Agreements should be treated as "consolidated" and alleging that "there are numerous remaining material obligations for the Debtors and for [the Town] under the [Agreements]." Motion, p. 5.[2] The Debtors are incorrect. In so arguing, the Debtors fail to mention in any detail the prepetition specific performance action the Town commenced in the state Circuit Court

---

[2] The Motion contains neither numbered paragraphs nor numbered pages. Page citations to the Motion refer to the number ascribed by CM/ECF to the Motion in Docket 162.

because of the Debtors' failure to perform under the Agreements, and the legal consequences that flow from their material breach of the Agreements that are fatal to the Motion. As set forth in the Prior Objection:

> 13. Specifically, in the Reversion Agreement, the Debtors acknowledged that, under section 7.H of the Sale Agreement, the Town and the Debtors entered into the Reversion Agreement "***to memorialize [the Debtors'] agreement to undertake and complete Eligible Work on Parcel D and that in the event that [the Debtors] failed to complete same in accordance with the milestone timeline set forth in the Preservation Agreement, all remaining funds in escrow pursuant to the Parcel D Escrow Agreement would be released to Seller***." Reversion Agreement, p. 1.
>
> 14. The Reversion Agreement provides that the Debtors shall complete certain Eligible Work in accordance with the completion schedule set forth in section 7(a) of the Preservation Agreement, which was incorporated by reference into the Reversion Agreement. *See id.*, ¶ 3(a).
>
> 15. Further, ***the Reversion Agreement provides that, if the Debtors fail to complete "Eligible Work" within the "completion schedule" contained in the Preservation Agreement, then, within 10 days of their receipt of the Town's written notice of such failure, the Debtors must convey the Parcel D units back to the Town***. *See id,* ¶ 4(a). Upon such a reversion, the Reversion Agreement also contains a mechanism for determining the amount (if any) of compensation to be paid to the Debtors from the escrowed development funds for pre-reversion improvements made to the Parcel D properties. *Id.* ¶ 4(c).

Prior Objection, ¶¶ 13-15 (emphasis added).

6. Pursuant to the Reversion Agreement, the Debtors' failure to convey title to the Parcel D properties, by execution and delivery of a special warranty deed as provided in ¶ 4(a), constituted an Event of Default, giving rise to the Town's right to enforce the Reversion Agreement by action for specific performance. Reversion Agreement, ¶ 8. In short, the Reversion Agreement obligated the Debtors either to perform their duties under the Preservation Agreement or to convey the Parcel D units back to the Town. The Reversion Agreement also provides that "in the event the Purchaser fails to complete the Eligible Work in accordance with the milestone timeline set forth in the Preservation Agreement all remaining funds held in escrow pursuant to the Parcel D

4

Escrow Agreement…shall be released and disbursed to" the Town. *See* Second Am. Compl., ¶ 46 (*citing* Reversion Agreement pp. 1-2 & ¶ 1; as well as the escrow agreement ¶ 7(f)).

7. Well prior to the Petition Date, following the Debtors' failure of performance within the deadlines imposed by the completion schedule set forth in the Preservation Agreement, the Town gave the Debtors written notice on or about May 10, 2023, and amended notice on November 30, 2023,[3] that the Town had elected to have Parcel D Units revert to the Town and requested the special warranty deeds called for in the Reversion Agreement. The Debtors failed and refused to execute and return such deeds.

8. On May 25, 2023, the Town filed the Lawsuit against the Debtors. The Second Amended Complaint filed in the Lawsuit contains one count seeking specific performance as expressly provided for under ¶ 8 of the Reversion Agreement. *See* Second Am. Compl. The foundational premise of the Lawsuit is that as a result of the Debtors' Event of Default, namely, their failure to complete Eligible Work within the agreed upon completion schedule in the Preservation Agreement, the Debtors had a duty upon notice by the Town to execute and deliver special warranty deeds conveying the units at issue back to the Town, and thus specific performance should be granted. Further, the Town expressly alleged that it "has performed all applicable conditions precedent necessary for an award of specific performance in accordance with the respective contracts," *i.e.*, that there remain no executory obligations of the Town, for the right of reverter had vested and there remained no material obligation for the Town to perform. *See* Second Am. Compl. ¶ 64.

---

[3] Copies of the aforementioned correspondence dated May 10, 2023, and November 30, 2023, are attached as **Exhibits "D", "E", "F" and "G"** to several Proofs of Claim filed in the above-captioned cases, including the claims denoted on the Claims Register for Case No. 24-12500-LSS as Claims 12-1 and 13-1 against WHP and WHQ, respectively.

5

**Argument**

9. The Debtors have not met their burden of persuasion, and the Motion should be denied, because the Agreements are not executory contracts that the Debtors are entitled to assume or reject. Put simply, because of the Debtors' pre-petition material breach of their duty to revert the Parcel D units, the Town had no material obligations remaining and was just awaiting state Court ordered reversion of such property. Moreover, Debtors' prepetition material breach of the Agreements entitled the Town to pursue such rights and remedies under applicable non-bankruptcy law against the Debtors. Such rights and remedies affect every aspect of the Debtors' chapter 11 cases, including the extent to which the Debtors' prepetition failure of performance under the Agreements rendered them non-executory as a matter of law. Accordingly, to the extent the Court does not simply deny the Motion, the Court should abstain from considering the Motion until the matters at issue in the Lawsuit have been fully and finally resolved.

A. The Agreements Are Not Executory Contracts[4]

10. As explained in the Prior Objection, a contract is executory only if the "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing performance of the other." *Gloria Mfg. Corp. v. International Ladies' Garment Workers' Union*, 734 F.2d 1020, 1021-22 (4th Cir. 1984) (citation omitted). As has been extensively documented by the Town, the Debtors materially breached the Agreements prepetition when they failed to stabilize, preserve and rehabilitate historic structures on the Parcel D properties in the manner and within the time prescribed in the Preservation Agreement. As a result, the Debtors were obligated on the Town's

---

[4] As set forth above, the Town has incorporated by reference the legal discussion contained in the Prior Objection. As such, the Town does not here restate the legal standards and burdens applicable to a debtor's motion to reject an executory contract or the discussion of the test for determining whether a contact is, in fact, executory.

6

notice to, *inter alia*, allow the Parcel D properties to revert to the Town, and the Town was entitled to the return of all funds that were escrowed pursuant to the Agreements.  *See* ¶¶ 6-7 *supra*.

11. As a matter of law, the Debtors' prepetition material breach of the Agreements foreclosed any argument that the Agreements were executory on the Petition Date. "The Fourth Circuit has held that 'a material breach by one party to a contract excuses the other party from performance.'" *Bunting Graphics, Inc. v. The Whiting-Turner Contracting Co.*, 2025 WL 299211, at *15 (D. Md. January 23, 2025) (quoting *Final Analysis Commc'n Servs., Inc. v. Gen. Dynamics Corp.*, 253 F. App'x. 307, 313 (4th Cir. 2007) (citing *Rogers Refrigeration Co., Inc. v. Pulliam's Garage, Inc.*, 66 Md. App. 675, 684-85, 505 A.2d 878, 883 (1986); *Fromm Sales Co. v. Troy Sunshade Co.*, 222 Md. 229, 233, 159 A.2d 860, 863 (1960)). "Given this, a party who materially breaches a contract cannot recover damages for the other party's subsequent nonperformance, as the latter party's performance is excused." *Bunting Graphics*, 2025 WL 299211, at *15 (citing *Jay Dee/Mole J.V. v. Mayor and City Council of Baltimore*, 725 F. Supp. 2d 513, 528 (D. Md. 2010); *Bollech v. Charles County*, 166 F. Supp. 2d 443, 458 (D. Md. 2001) ("Failure of performance by one party suspends the duty of the other party to perform.") (internal citations omitted)).

12. In the Prior Objection, the Town discussed at length the recent decision of the Bankruptcy Appellate Panel of the Ninth Circuit in *In re Svenhard's Swedish Bakery*, 653 B.R. 471, 477 (B.A.P. 9th Cir. 2023) (contract was not executory under Maryland law).  The court in *Swedish Bakery* observed that under *Countryman*, the Court must first determine whether both parties have remaining material obligations.  If either party has "substantially performed," then the contract is not executory.  *See id.* at 477 (citation omitted).  Critically, the materiality of a remaining obligation and whether the failure to perform a remaining obligation is a material breach or is legally excused are issues of state law.  *See id.*  The *Swedish Bakery* Court stated that under

Maryland law "any breach of contract may give rise to a cause of action for damages, [but] only a material breach discharges the non-breaching party of its duty to perform." *Id.* (citing *Jay Dee/Mole*, 725 F.Supp.2d at 526). A breach is material under Maryland law, it said, if it "affects the purpose of the contract in an important or vital way." *Id.* (*citing In re Cho,* 581 B.R. 452, 462 (Bankr. D. Md. 2018) (cleaned up)). *Accord*, *In re Avianca Holdings S.A.*, 618 B.R. 684, 696 (Bankr. S.D.N.Y. 2020) (contract term is material if contract provides that its breach gives rise to a right to terminate) (citing *Gen. DataComm Indus., Inc. v. Arcara (In re Gen. DataComm Indus., Inc.)*, 407 F.3d 616, 624 (3d Cir. 2005); *Jay Dee/Mole*, 725 F. Supp. 2d at 526 ("Where the contract itself is clear in making a certain event a material breach of that contract, a court must ordinarily respect that contractual provision.") (internal quotation marks and citations omitted); *Bunting Graphics,* 2025 WL 299211, at *17 ("[A] breach is material 'if it affects the purpose of the contract in an important or vital way.'") (quoting *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (quoting *Sachs v. Regal Sav. Bank, FSB*, 705 A.2d 1, 4 (Md. Ct.Spec. App. 1999)).

13. The *Swedish Bakery* court further noted that, as a matter of Maryland law, whether a counterparty has a remaining duty to perform cannot be determined without analyzing whether any performance conditions exist because, "'It is fundamental that where a contractual duty is subject to a condition precedent … there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused.'" *See Swedish Bakery,* 653 B.R. at 477-78 (citation omitted). Interpreting the parties' obligations under a settlement agreement between a debtor and a Pension Fund, the Court in *Swedish Bakery* concluded that the agreement was not an executory contract when it "plainly provides for the Pension Fund to release claims upon full payment by Debtor. Thus, the failure of the Pension Fund

8

to execute the releases would not constitute a material breach sufficient to excuse Debtor's performance." *Id.* at 477. Further, it explained the relevant Maryland law:

> The express requirement for the Pension Fund to execute releases "[u]pon full payment" creates a performance condition under Maryland law. *See Chirichella v. Erwin*, 270 Md. 178, 310 A.2d 555, 557 (1973) (stating that phrases such as "if," "provided that," "when," "after," "as soon as," or "subject to" are sufficient to create express conditions). "Generally, when a condition precedent is unsatisfied, the corresponding contractual duty of the party whose performance was conditioned on it does not arise." *B & P Enters. v. Overland Equip. Co.*, 133 Md.App. 583, 758 A.2d 1026, 1038 (Md. Ct. Spec. App. 2000).
>
> Thus, the Pension Fund could not breach the Settlement by refusing to execute the releases unless Debtor had fully performed by making all payments. *See NSC Contractors, Inc. v. Borders*, 317 Md. 394, 564 A.2d 408, 413 (1989) ("It is fundamental that where a contractual duty is subject to a condition precedent ... there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused.") (quoting *Laurel Race Course v. Regal Constr. Co.*, 274 Md. 142, 333 A.2d 319, 327 (1975)); Restatement (Second) of Contracts § 235, *cmt. b* ("Non-performance is not a breach unless performance is due. Performance may not be due because ... a condition has not occurred.").

*Id.* at 477-78. Thus, the Court held that, "Because the Pension Fund's contractual obligations are due only after Debtor fully performs by making all required payments, a breach by the Pension Fund could not logically excuse Debtor's performance of its duty to make payments." The agreement, therefore, was not executory. *See id.* at 478.[5]

14. In this case, the Debtors' material breaches unquestionably were central to the fundamental purpose of the Agreements – *i.e.*, the stabilization, preservation and rehabilitation of the Parcel D units.[6] This alone means the Debtors' failure to perform their obligations in the

---

[5] As an additional reason, the Court questioned whether the pension fund's obligation to execute releases was material because the settlement agreement and proof of payment would operate as a defense to any collection action, and the releases themselves were "likely ministerial and not sufficient to render the Settlement executory." *Id.* at 478 (citation omitted).

[6] The third Recital to the Parcel D Preservation Agreement expressly states that its purpose is to "memorialize [Debtors'] agreement to use the [escrowed funds] to undertake and Complete the Eligible Work. . . ." The same Agreement provides that the Debtors "shall Complete the Eligible Work" in accordance with a Completion Schedule. Id., ¶ 7. The Reversion Agreement expressly provides that the Debtors' failure to complete the Eligible

manner and within the completion time prescribed in the Agreements, and their subsequent failure to honor their obligations under the Reversion Agreement and Parcel D Escrow Agreement to deed the Parcel D properties and return the escrowed funds to the Town, absolved the Town of any further obligation to perform under the Agreements.  As stated in the Prior Objection, whether a contract is executory is generally determined at the petition date.  *In re Hawker Beechcraft, Inc.*, 486 B.R. 264 (Bankr. S.D.N.Y. 2013).  In this case, the Debtors were in default of the Agreements before bankruptcy, with cure periods having expired, based on notices by the Town that pre-dated the bankruptcy filing.

15. Moreover, even prior to the Debtors' material failure of performance under the Agreements, the Town's performance obligations under such Agreements were both non-material and dependent upon the satisfaction by the Debtors of performance conditions.  As detailed in the Prior Objection, the Sale Agreement provided several conditions to be met by the Town <u>prior</u> to closing in favor of the Debtors, including, but not limited to, adopting all necessary zoning amendments as set forth in the preliminary concept plan and approving the Debtors' Final Development Plan.  *See* Prior Objection, ¶ 7.  Indeed, according to the express terms of the Sale Agreement, only a few limited terms survived closing.  In contrast, the Sale Agreement provided that the Debtors would be obligated <u>after</u> closing to preserve and rehabilitate the Historic Structures on Parcel D within the time deadlines set out in the Agreements.  *See id.* ¶ 12. Further, while the Reversion Agreement provided the Town with rights and remedies to monitor the

---

Work in accordance with the Completion Schedule entitles the Town to recover the Parcel D properties, and the Parcel D Escrow Agreement entitles the Town to the return of all remaining escrowed funds upon that occurrence.  Reversion Agreement, ¶ 4(a); Parcel D Escrow Agreement, ¶ 7(f).  Accordingly, by their express terms, the Agreements treated the Debtors' breach of the obligation to complete Eligible Work within the Completion Schedule as material, since reversion of the Parcel D properties and return of the escrowed funds would defeat the fundamental reason for the Agreements as described in the Recital.  Since the Agreements unmistakably treated performance in accordance with the Completion Schedule as material, Debtors' failure to do so constituted a material breach under Maryland law.  *See Jay Dee/Mole*, 725 F.Supp2d at 526.

Debtors' performance and the right to give notice of the Debtors' duty to effect the reversion of property back to the Town, the Agreements did not obligate the Town to undertake any material action or perform any condition to be entitled to the Debtors' performance. *See id.*, ¶ 42.

16. In the Motion, the Debtors attach **Exhibits B and C** to try to argue that the Town had remaining obligations. According to the Debtors, **Exhibit B** documents "extensive communications between the Debtors and [the Town] regarding required responses and approvals," and **Exhibit C** purports to be a "comprehensive summary of the obligations" of the Debtors and Town under the Agreements. All of the "extensive communications" summarized in **Exhibit B**, however, occurred prior to the Town's amended default notices and more than five (5) months before the Debtors filed their chapter 11 cases, and thus cannot sustain an argument of remaining obligations. More tellingly, all of the communications illustrate the Town's granting or withholding approval of a request by the Debtors after the purported satisfaction by the Debtors of a performance condition and are thus irrelevant here.

17. Similarly, all of the purported obligations of the Town under the Agreements set forth in **Exhibit C** are obligations, *inter alia*, to grant or deny approvals, consents, or releases within a certain number of days following the occurrence of an event allegedly requiring such performance. In other words, **Exhibit C** demonstrates that the Town's alleged performance obligations not only would be non-material under the *Swedish Bakery* analysis, but each would only be triggered by the occurrence of a performance condition. Read together with **Exhibit B**, the Debtors' own exhibits demonstrate that no performance conditions have even arguably occurred since October 2023 – and by that time the Debtors already had materially breached the Agreements and were obligated to return the Parcel D properties to the Town. Put another way, the Court's statement in *Swedish Bakery* applies equally here: "Thus, the [Town] could not breach

11

the [Agreements] by refusing to [grant or deny approvals, consents, or releases] unless Debtor[s] had fully performed by [doing the Eligible Work within the completion schedule in the Agreements]." *Id.* at 477-78.

18. Nevertheless, the Debtors point to certain provisions in the Agreements, but the provisions they reference are plainly introduced by words of condition precedent as noted in *Swedish Bakery*. *See* Debtors' Motion, p. 7 (citing Preservation Agreement "In the event the Debtors seek to have certain work to be performed….", "In the event the Debtors seek to have certain payments made….," and "If the payment requisition is approved…"). Further, the arguments they advance as to the Agreements simply ignores the legal consequence of their pre-petition material breach, which is fatal to the condition precedents argument on which Debtors rely.

19. For all of the foregoing reasons, the Agreements were not executory on the Petition Date. Therefore, the Agreements are not capable of assumption or rejection, and the Motion should be denied.

20. Finally, the Debtors' Motion(s) should be denied for the additional reason that the obligations under the Reversion Agreement and the Preservation Agreement are covenants that run with the land and are not subject to rejection under § 365, an argument that the Debtors fail to address. Prior Motion, ¶¶ 47-50.

    B.    The Claims, Causes of Action, and Defenses of the Parties to the Agreements are at Issue and can be Timely Adjudicated in the Lawsuit

21. As more fully stated in the Lift-Stay Motion and Motion to Abstain, the Town commenced the Lawsuit prepetition to address the Debtors' failure of performance under the Agreements pertaining to the Parcel D properties. The Debtors' Motion makes no reference to the Lawsuit and simply assumes that the parties to the Agreements continue to acknowledge an

12

ongoing relationship under the Agreements. Perhaps in an effort to obfuscate their history of nonperformance of their obligations with respect to the Parcel D properties, the Debtors simply ignore the nature and purpose of the Agreements, the Debtors' prepetition failure to perform under them, and the Town's ongoing effort to regain title to the Parcel D properties by specific performance as a result of the Debtors' material breach of performance.

22. In the Lawsuit, the Debtors raised a *force majeure* defense and filed a counterclaim alleging that their nonperformance under the Agreements should be excused because the Town allegedly breached an implied duty of good faith and fair dealing. The Debtors alleged in the counterclaim that because of market conditions, the Town had an implied duty to cooperate with the Debtors and to exercise the Town's alleged "discretionary authority" -- a duty nowhere to be found in the Sale Agreement -- to approve rezoning and text amendment proposals that would permit development of substantially more residential units within the project than was agreed upon in: (i) the Sale Agreement, including its twelve (12) amendments in the four (4) years between contract signing and closing; (ii) the PEC preliminary plan adopted pursuant to the Sale Agreement; or (iii) the PEC statutory zoning that Respondents had sought prior to, and the passage of which was a condition of, closing (and was accepted by the Respondents at closing).

23. In short, the Debtors are not only not attempting to perform under the Agreements, but they have attempted to defend their non-performance by contending that the Town should have permitted them to develop Parcel D in a manner that was never contemplated under, and contradicts, the Agreements or the Sale Agreement when they acquired the project in 2018. Although this dispute, which was the subject of the Lawsuit when the Debtors filed their chapter 11 cases, remains unresolved, the Debtors ask the Court to treat the Agreements as executory even though such a determination presupposes that the Debtors' defenses to the Lawsuit are meritorious.

24. Resolution of the dispute at issue in the Lawsuit is fundamental to the determination of the extent to which the Town has claims against the Debtors under the Agreements and the related Note and Deed of Trust. The same issues are central to the Debtors' joint plan of reorganization, which presupposes that the Debtors will be able to pursue a development strategy that is at odds with the PEC zoning to which the Debtors agreed when they acquired the project. Accordingly, for the same reasons that the Town asked the Court in the Motion to Abstain to refrain from adjudicating the disputes underlying the Debtors' objection to the Town's Proofs of Claim, the Town submits that, if the Court is not inclined simply to deny the Motion on grounds that the Agreements are manifestly non-executory, the Court should defer consideration of the Motion until the disputes relating to the Agreements are resolved in the Lawsuit.

## Conclusion

WHEREFORE, for the foregoing reasons, The Town of Sykesville, respectfully requests that the Court enter an Order denying the Motion and granting The Town of Sykesville such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

Dated: February 7, 2025

/s/ Bradley J. Swallow
Bradley J. Swallow, (Bar No. 11250)
Lee B. Rauch, (Bar No. 12135)
FUNK & BOLTON, P.A.
100 Light Street, Suite 1400
Baltimore, Maryland 21202
410.659.8320 (telephone)
410.659.7773 (facsimile)
bswallow@fblaw.com
lrauch@fblaw.com

Counsel for The Town of Sykesville

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of February 2025, a copy of the foregoing Objection of the Town of Sykesville to Debtors' Motion for an Order Approving and Authorizing Rejection of Consolidated Executory Contract was served electronically by the Court's CM/ECF system on the following:

    Michael J. Lichtenstein, Esquire mjl@shulmanrogers.com; tlockwood@shulmanrogers.com; nlawal@shulmanrogers.com
    Rebekah F. Paradis, Esquire rparadis@shulmanrogers.com
    Lynn A. Kohen, Esquire lynn.a.kohen@usdoj.gov
    US Trustee – Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV
    Robert B. Scarlett, Esquire RScarlett@ScarlettCroll.com, krynarzewski@scarlettcroll.com, scarlettrr64434@notify.bestcase.com

                                           /s/ Bradley J. Swallow
                                           Bradley J. Swallow

52050.043:238698.5